**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Appellee,**

v.

**Kenneth Dale BRADLEY, Samuel L. Collins, Appellants.**

**No. 84-1795.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1984.

Decided March 21, 1985.

Charles R. Waters, II, Norfolk, Va. (W. David Timberlake, Terence Murphy, Kaufman & Canoles, Norfolk, Va., on brief), and Joel E. Davidson, New York City, for appellants.

Guy R. Friddell, III, Norfolk, Va. (Walter D. Kelley, Jr., Marie L. Achtemeir, Willcox, Savage, Dickson, Hollis & Eley, P.C., Norfolk, Va., on brief), for appellee.

Before PHILLIPS and CHAPMAN, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

CHAPMAN, Circuit Judge:

This expedited appeal involves a dispute between Merrill Lynch, Pierce, Fenner and Smith, Inc. (Merrill Lynch) and one of its former account executives, Kenneth D. Bradley. Merrill Lynch brought this action against Bradley seeking damages as well as injunctive relief to prevent him from using Merrill Lynch's records and soliciting Merrill Lynch's clients. On July 26, 1984, the district court held a hearing on Merrill Lynch's motion for a temporary restraining order and Bradley's motion to stay the trial and compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1982). At the conclusion of the hearing, the district court granted Merrill Lynch a preliminary injunction, denied Bradley's motion to stay the injunction, and ordered expedited arbitration of the parties' dispute. Bradley appeals from the district court's order granting Merrill Lynch a preliminary injunction pending arbitration. 28 U.S.C. § 1292(a)(1). We affirm.

## I

On December 16, 1981, Merrill Lynch hired Bradley to serve as an account executive at its office in Newport News, Virginia. At that time Merrill Lynch and Bradley entered into an Account Executive Agreement which provides, *inter alia*, the following:

1. All records of Merrill Lynch, including the names and addresses of its clients, are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination for any reason of my employment with Merrill Lynch, and that none of such records or any part of them is to be removed from the premises of Merrill Lynch either in original form or in duplicated or copied form, and that the names, addresses, and other facts in such records are not to be transmitted verbally except in the ordinary course of conducting business for Merrill Lynch.

2. In the event of termination of my services with Merrill Lynch for any reason, I will not solicit any of the clients of Merrill Lynch whom I served or whose names became known to me while in the employ of Merrill Lynch in any community or city served by the office of Merrill Lynch, or any subsidiary thereof, at which I was employed at any time for a period of one year from the date of termination of my employment. In the event that any of the provisions contained in this paragraph and/or paragraph (1) above are violated I understand that I will be liable to Merrill Lynch for any damage caused thereby.

The Account Executive Agreement also provides that "any controversy between myself [Bradley] and Merrill Lynch arising out of my employment, or the termination of my employment with Merrill Lynch for any reason whatsoever shall be settled by arbitration...." In addition, Bradley was required to sign New York Stock Exchange Form U–4 when he registered with the Exchange and began his employment at Merrill Lynch. Like his employment agreement, this form requires that any controversy between Bradley and any member organization of the New York Stock Exchange shall be settled by arbitration. Finally, both Rule 347 of the Rules of the New York Stock Exchange and Article VIII, Section One of the Exchange Constitution provide that all controversies between members of the Exchange arising out of the business of the members shall be settled by arbitration in accordance with

the Rules of the New York Stock Exchange.

At approximately 4:00 p.m. on Friday, July 20, 1984, Bradley tendered his resignation to Merrill Lynch and announced that he had accepted a position with Prudential-Bache Securities, Inc. at its office in Virginia Beach, Virginia. Merrill Lynch alleges that as early as the day following his resignation Bradley telephoned most or all of his Merrill Lynch customers and urged them to transfer their accounts from Merrill Lynch to Prudential-Bache. Merrill Lynch learned of Bradley's actions and filed suit on Monday, July 23, 1984, alleging breach of contract, breach of fiduciary duty, and violation of *Va. Code* § 18.2–499.

Merrill Lynch also brought suit against Samuel L. Collins, vice president and general manager of Prudential-Bache's office in Virginia Beach, for tortious interference with contract and conspiracy to injure another in its trade or business. Merrill Lynch claims that the instant case represents the third time within ten months that a Merrill Lynch account executive in the Hampton Roads, Virginia area had been lured away by Prudential-Bache and had begun immediately to breach his contractual and fiduciary obligations by soliciting Merrill Lynch's customers.[1]

The district court's preliminary injunction prohibits Bradley from soliciting any customers whom he had serviced or learned about while employed by Merrill Lynch. The injunction further prohibits Bradley from participating in the servicing of these customers by Prudential-Bache, including any referrals to other personnel of Prudential-Bache. At the request of Bradley's counsel, however, the district court's order was modified to delete the requirement that the New York Stock Exchange conduct arbitration in an expedited fashion.

## II

Merrill Lynch and Bradley both agree that the dispute between them is subject to mandatory arbitration and that Bradley is not in default in proceeding with arbitration. Thus, the principal issue on appeal is whether § 3 of the Federal Arbitration Act, 9 U.S.C. § 3 (1982), absolutely precludes a district court from granting one party a preliminary injunction to preserve the status quo pending the arbitration of the parties' dispute.

Bradley argues that the district court abused its discretion in granting Merrill Lynch a preliminary injunction because § 3 precludes a court from considering the merits of a controversy when the dispute is subject to mandatory arbitration. Bradley cites two recent decisions to support his argument. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey,* 726 F.2d 1286 (8th Cir.1984); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Scott,* No. 83–1480 (10th Cir. May 12, 1983).[2]

In *Hovey* the Eighth Circuit held that § 3 precludes a court from granting Merrill Lynch a preliminary injunction against its former account executives pending arbitration. The court stated that "where the Arbitration Act is applicable and no qualifying contractual language has been alleged, the district court errs in granting injunctive relief." 726 F.2d at 1292. In *Scott* the Tenth Circuit vacated, by order and without formal written opinion, a preliminary injunction which the district court had granted pending arbitration. Never-

---

1. This situation represents a recurring problem. In their briefs to this Court the parties have cited sixty-four (64) federal and state cases involving similar fact patterns. Most of these decisions are unreported. Because of this problem, Merrill Lynch recently has changed its Account Executive Agreement to provide expressly for a preliminary injunction pending arbitration.

2. *Accord, Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shubert,* 577 F.Supp. 406 (M.D.Fla.1983);

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. de Liniere,* 572 F.Supp. 246 (N.D.Ga.1983); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. DeCaro,* 577 F.Supp. 616 (W.D.Mo.1983); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Thomson,* 574 F.Supp. 1472 (E.D.Mo.1983); *Smith v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 575 F.Supp. 904 (N.D.Tex.1983); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCollum,* 666 S.W.2d 604 (Tex.App.1984).

theless, for the reasons that follow, we decline to follow *Hovey* and *Scott* and instead hold that, under certain circumstances, a district court has the discretion to grant one party a preliminary injunction to preserve the status quo pending the arbitration of the parties' dispute.

The starting point for our inquiry, of course, is the language of § 3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, *the court in which such suit is pending,* upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action* until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). Section 3 does not contain a clear command abrogating the equitable power of district courts to enter preliminary injunctions to preserve the status quo pending arbitration. Instead, § 3 states only that the court shall stay the "trial of the action"; it does not mention preliminary injunctions or other pre-trial proceedings. Certainly Congress knows how to draft a statute which addresses all actions within the judicial power.[3] Furthermore, nothing in the statute's legislative history suggests that the word "trial" should be given a meaning other than its common and ordinary usage: the ultimate resolution of the dispute on the merits. *See* Senate Rep. No. 536, 68th Cong., 1st Sess. (1924); H.R.Rep. No. 96, 68th Cong., 1st Sess. (1924).

We do not believe that Congress would have enacted a statute intended to have the sweeping effect of stripping the federal judiciary of its equitable powers in all arbitrable commercial disputes without undertaking a comprehensive discussion and evaluation of the statute's effect. Accordingly, we conclude that the language of § 3 does not preclude a district court from granting one party a preliminary injunction to preserve the status quo pending arbitration.[4]

Our interpretation of § 3 is not inconsistent with this Court's decision in *In re Mercury Construction Corp.,* 656 F.2d 933 (4th Cir.1981) (en banc), *aff'd sub nom. Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Bradley relies upon an isolated phrase in *In re Mercury Construction Corp.* to support his argument that § 3 requires the stay of "all proceedings" pending arbitration. *See* 656 F.2d at 939 ("Section 3 requires a stay of all proceedings until such arbitration has been had in accordance with the terms of the agreement ..."). This reliance is misplaced, however, because that decision did not turn in any way on the meaning of the term "trial" as used in § 3. Rather, *In re Mercury Construction Corp.* involved the unrelated question of whether a federal court may compel arbitration under § 4 even though one of the parties has instituted a state court action. 656 F.2d at 938. Thus, the "all proceedings" language is dicta.

The Second Circuit's decision in *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064 (2d Cir.1972), fully supports our decision here. *Accord, Sauer-Getriebe KG v. White Hydraulics, Inc.,* 715 F.2d 348, 350 (7th Cir.1983) ("[plaintiff's] right to seek injunctive relief in court and its right to arbitrate are not incompatible"); *Connecticut Resources Recovery Authority v. Occidental Petroleum Corp.,* 705 F.2d 31,

---

**3.** For example, 28 U.S.C. § 2283 provides:

A court of the United States may not grant an injunction to stay *proceedings* in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

(emphasis added). *See also* 11 U.S.C. § 362(a)(1) (filing of bankruptcy petition operates as a stay of any "judicial, administrative, or other proceeding against the debtor").

**4.** In *Hovey* the Eighth Circuit did not mention the language of § 3.

35 (2d Cir.1983); *Guinness-Harp Corp. v. Joseph Schlitz Brewing Co.,* 613 F.2d 468 (2d Cir.1980); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. District Court,* 672 P.2d 1015 (Colo.1983). In *Erving* the Second Circuit affirmed the granting of a preliminary injunction prohibiting a professional basketball player from joining any other team pending arbitration. In *Hovey* the Eighth Circuit concluded that *Erving* was distinguishable because Erving's contract expressly authorized injunctive relief in the event of a breach. *Hovey,* 726 F.2d at 1291 n. 10. However, the Second Circuit specifically noted in its opinion that "[t]he provision relative to 'obtaining an injunction or other equitable relief' is merely declaratory of existing legal rights." *Erving,* 468 F.2d at 1067.

This Court's decisions in *Lever Brothers Co. v. International Chemical Workers Union, Local 217,* 554 F.2d 115 (4th Cir. 1976), and *Drivers, Chauffeurs, Warehousemen & Helpers Teamsters Local Union No. 71 v. Akers Motor Lines, Inc.,* 582 F.2d 1336 (4th Cir.1978), provide additional support for our decision here. Although *Lever Brothers* and *Akers Motor Lines* are factually distinguishable from the instant case because those cases were decided under federal labor acts which do not mandate a stay of the trial pending arbitration, they nevertheless provide analogous authority for the district court's grant of preliminary injunctive relief. In those cases this Court issued preliminary injunctions in the face of the Norris-LaGuardia Act which, unlike the Federal Arbitration Act,

appears expressly to forbid injunctive relief.[5]

In *Lever Brothers* this court adopted the following standard for preliminary injunctions of labor disputes subject to mandatory arbitration:

> An injunction to preserve the *status quo* pending arbitration may be issued either against a company or against a union in an appropriate *Boys Markets* case where it is necessary to prevent conduct by the party enjoined from rendering the arbitral process a hollow formality in those instances where, as here, the arbitral award when rendered could not return the parties substantially to the *status quo ante.*

554 F.2d at 123. Similarly, in *Akers Motor Lines* we stated that if the enjoined conduct would render the arbitration process a "hollow formality," the clear language of the Norris-LaGuardia Act must give way to the congressional policy favoring arbitration. 582 F.2d at 1341.

■ We think the *Lever Brothers—Akers Motor Lines* standard represents a sound approach for determining whether a district court has abused its discretion in granting a preliminary injunction pending arbitration. Accordingly, we hold that where a dispute is subject to mandatory arbitration under the Federal Arbitration Act, a district court has the discretion to grant a preliminary injunction to preserve the status quo pending the arbitration of the parties' dispute if the enjoined conduct would render that process a "hollow formality." The arbitration process would be a hollow formality where "the arbitral

---

**5.** Section 4 of the Norris-LaGuardia Act provides, *inter alia:*

> No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute ... from doing, whether singly or in concert, any of the following acts:
>
> (a) Ceasing or refusing to perform any work or to remain in any relation of employment.

29 U.S.C. § 104 (emphasis added). Despite this clear language, the Supreme Court twice has ruled that the Norris-LaGuardia Act does not divest the courts of jurisdiction to enjoin preliminarily certain strikes pending arbitration of the underlying dispute. *Brotherhood of Railroad Trainmen v. Chicago River & Indiana R.R. Co.,* 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). In *Boys Markets* the Supreme Court ruled that a literal reading of the Norris-LaGuardia's anti-injunction provisions would undermine the Congressional policy favoring arbitration of labor disputes.

award when rendered could not return the parties substantially to the *status quo ante.*" *Lever Brothers,* 554 F.2d at 123. The instant case is just such a case.

We think that our decision will further, not frustrate, the policies underlying the Federal Arbitration Act. In this case preliminary injunctive relief pending arbitration furthers congressional policy by ensuring that the dispute resolution would be a meaningful process because, without such an injunction, Bradley's conduct might irreversibly alter the status quo. When an account executive breaches his employment contract by soliciting his former employer's customers, a nonsolicitation clause requires immediate application to have any effect. An injunction even a few days after solicitation has begun is unsatisfactory because the damage is done. The customers cannot be "unsolicited." It may be impossible for the arbitral award to return the parties substantially to the status quo ante because the prevailing party's damages may be too speculative.

■ We cannot accept Bradley's argument that preliminary injunctions support the congressional policy favoring arbitration of labor disputes but undermine the congressional policy favoring arbitration of commercial and maritime matters. Nor can we accept Bradley's argument that the district court's preliminary injunction will prejudice the arbitrator's subsequent decision on the merits. The arbitrators are sworn to render a decision based solely upon the evidence presented to them.[6] We must assume that the arbitrators will perform their task conscientiously. Furthermore, we do not believe that Congress intended § 3 to tie a district court's hands while one party, pending the arbitration of the parties' dispute, deliberately and irreversibly altered the status quo and thereby deprived the other party of a meaningful arbitration process.

Finally, the Supreme Court's decisions in *Prima Paint Corp. v. Flood & Conklin*

*Manufacturing Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and *Buffalo Forge Co. v. United Steelworkers,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), do not compel a different result. In *Prima Paint* the Supreme Court held that the question of whether a contract containing an arbitration provision is void because of fraud in the inducement is for the arbitrator to decide, not the courts. 388 U.S. at 403–04, 87 S.Ct. at 1805–06. In *Buffalo Forge* the Supreme Court held only that the anti-injunction provision of the Norris-LaGuardia Act precludes a court from granting a preliminary injunction where the labor strike, in violation of a "no strike" clause, did not involve an arbitral dispute. 428 U.S. at 407, 96 S.Ct. at 3147. Neither case, however, directly addressed the issue presented here, namely, whether § 3 of the Federal Arbitration Act absolutely precludes a district court from granting one party a preliminary injunction to preserve the status quo pending arbitration.

### III

■ The final issue is whether the district court abused its discretion in granting the injunction. Under the balance of hardship test the district court must consider, in "flexible interplay," the following four factors in determining whether to issue a preliminary injunction: (1) the likelihood of irreparable harm to the plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest. *Blackwelder Furniture Co. v. Seilig Manufacturing Co.,* 550 F.2d 189, 193–96 (4th Cir.1977). Under this test the district court must first compare the likelihood of irreparable harm to the plaintiff with the potential harm the defendant will experience from the grant of preliminary injunctive relief. If the balance of hardship tips decidedly in the plaintiff's favor, then the district court may

---

6. *See* Securities Industry Conference on Arbitration, *How to Proceed with the Arbitration of a* *Small Claim,* at 7.

grant a preliminary injunction if it determines that the dispute presents a serious issue for litigation and that the injunction will serve the public interest. *Id.* at 194–95. *Accord, North Carolina State Ports Authority v. Dart Containerline Co.,* 592 F.2d 749, 750 (4th Cir.1979). Because these determinations involve findings of fact, a district court's order granting preliminary injunctive relief may be reversed only if an abuse of discretion is shown. *West Virginia Highlands Conservancy v. Island Creek Coal Co.,* 441 F.2d 232, 235 (4th Cir. 1971); *Singleton v. Anson County Board of Education,* 387 F.2d 349, 350 (4th Cir. 1967).

 We are unable to conclude that the district court abused its discretion in granting a preliminary injunction pending arbitration. We think that the district court was within its discretion in concluding that the balance of hardship test tips decidedly in Merrill Lynch's favor because Bradley did not establish that the preliminary injunction pending expedited arbitration would cause him harm and because Merrill Lynch faced irreparable, noncompensable harm in the loss of its customers. This court has recognized that "irreparability of harm includes the 'impossibility of ascertaining with any accuracy the extent of the loss.'" *Blackwelder Furniture Co.,* 550 2d at 197 (quoting *Foundry Services Inc. v. Beneflux Corp.,* 206 F.2d 214, 216 (2d Cir.1953)). Thus, the district court implicitly found that arbitration of this dispute would be a hollow formality absent preliminary relief. Accordingly, the order of the district court is

AFFIRMED.