**Merrill Lynch, Pierce, Fenner & Smith Inc. v. Moose**

*Gregory S. Rubin, Donald L. Reihart,* for plaintiff.
*Jack M. Stover, Thomas J. Kavaler,* for defendants.

MILLER, *J.,* June 19, 1986 — On June 9, 1986, this court granted an ex parte preliminary injunction upon plaintiff entering security in the amount of $50,000. The court further ordered that the injunction remain in effect until June 13, 1986, at which time a hearing was held on the issue of the continuance of the injunction. The court also heard argument on the issue of its jurisdiction; that is, whether the dispute is one properly subject to arbitration, and if so, whether the proceedings in this court should be stayed. At this hearing the court ordered that the injunction and bond continue until June 17, 1986, at which time a decision would be filed on the above issues. Our decision is that the issues set forth in plaintiff's complaint be submitted to arbitration pursuant to the Federal Arbitration Act, and we will continue the preliminary injunction pending the arbitration of the parties' dispute.

As a brief factual background, plaintiff Merrill Lynch avers in its complaint that on May 10, 1986, defendants Moose, Beard and Rohrbaugh, without prior notice, terminated their employment with Merrill Lynch for a competitor, E. F. Hutton. At

some point prior to leaving, defendants, while still in the employ of Merrill Lynch, copied books and records of the commodities department. Plaintiff argues that defendants then "commenced a campaign to solicit and convert the entire Merrill Lynch commodities department to their own personal gain." Plaintiff believes that defendants received a $100,000 "package deal" to convert Merrill Lynch records and to "steal" the entire commodities department.

Plaintiff further asserts that this activity is prohibited on the basis of the Account Executive Trainee Agreements entered into with all defendants. These agreements provide (1) that "names and addresses of its clients, are and shall remain the property of Merrill Lynch" before, during and after termination, (2) that such names, addresses, customer lists, and other such records are not to be "removed, duplicated, copied or transmitted" in any form, verbally or otherwise, and (3) that defendants shall not solicit any such clients whom they came to serve. or learned the identity of while in plaintiff's employ. The restrictions embodied in the agreements are limited in duration to the reasonable term of one year.

On or about June 12, 1986, defendants filed a motion to compel arbitration and stay proceedings. We will consider the arbitration issue first.

First, we hold that a valid agreement to arbitrate exists.[1] Merrill Lynch is a member of various stock

---

1. The Account Executive Trainee Agreements entered into between the parties do not specifically compel arbitration. However, reference is made to arbitration. Paragraph 4 of the agreement provides:

"I further consent to the issuance of a temporary restraining order or a preliminary or permanent injunction to prohibit the

exchanges, including the New York Stock Exchange and of various commodities exchanges. Defendants in this case are registered representatives with the various commodities exchanges; however, they are not registered with the NYSE. Merrill Lynch, as a member of the NYSE, has agreed to comply with the NYSE rules, including the dispute resolution procedures of rule 347.

Rule 347 provides that *"[a]ny controversy between a registered representative and any member* or member organization *arising out of the employment or termination of employment of such registered representative* by and with such member of member organization shall *be settled by arbitration, at the instance of any such party*, in accordance with the arbitration procedure described elsewhere in these rules." (emphasis added).

If defendants were also registered with the NYSE, this rule would be part of their employment agreement with Merrill Lynch. *Merrill Lynch, Pierce, Fenner & Smith v. Hovey*, 726 F.2d 1286 (8th Cir. 1984). In *Hovey*, the court held that rule 347 constitutes a valid written agreement to arbitrate which is governed by the Federal Arbitration Act.

The *Hovey* court then considered the situation where the employees seeking to compel arbitration are not members of the NYSE, as is the case here. As in *Hovey*, defendants rely primarily on article VIII, section 1 of the NYSE constitution to support their claim for arbitration. This section provides that "[a]ny controversy between parties who are members . . . member firms . . . and any controversy be-

---

breach of any provision of this contract, or to maintain the status quo *pending the outcome of any arbitration proceeding which may be initiated.*" (emphasis added).

tween a non-member firm and a member . . . arising out of the business of such member . . . shall at the instance of any such party, be submitted for arbitration in accordance with the provisions of the constitution and the rules of the board of directors."

The court in *Hovey* stated: "The article of the constitution reflects the self-regulation of the securities industry, as well as the effort to provide an integrated method of resolving disputes involving the affairs of the NYSE." 726 F.2d at 1289. In conclusion, the court held that article VIII constitutes an agreement to arbitrate upon which non-members, such as defendants, can rely. We agree.

Second, we note that defendants commenced an arbitration under this section on June 11, 1986.

Third, we hold that the arbitration agreement between the parties reaches the subject matter of the dispute here. Merrill Lynch's claims against defendants must be arbitrated at the instance of the non-member defendants if the dispute is one "arising out of the business of" Merrill Lynch. See article VIII. In *Hovey*, the court held that the dispute between Merrill Lynch and the former employees concerning the solicitation of their customers and the retention of copies of their customer records arose out of their employment or termination of their employment, and therefore, was arbitrable before the NYSE. The factual situation before the court is almost identical to that in *Hovey*, and we hold that defendants' activities arose "out of the business of" Merrill Lynch.

In conclusion, the dispute is arbitrable pursuant to the Federal Arbitration Act, Given this, defendants would have us stay our proceedings until arbitration is completed. Again, defendants rely heavily on the *Hovey* decision for this issue as well, but we are more persuaded by the case of *Merrill Lynch,*

*Pierce, Fenner & Smith Inc. v. Bradley,* 756 F.2d 1048 (4th Cir. 1985).

In *Bradley,* the issue before the court was whether section 3 of the Federal Arbitration Act, 9 U.S.C. §3 (1982), absolutely precludes a district court from granting one party a preliminary injunction to preserve the status quo pending the arbitration of the parties' dispute. Section 3 states:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, *the court in which such suit is pending,* upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action* until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. §3 (emphasis added).

The court stated:

"Section 3 does not contain a clear command abrogating the equitable power of district courts to enter preliminary injunctions to preserve the status quo pending arbitration. Instead, section 3 states only that the court shall stay the "trial of the action," it does not mention preliminary injunctions or other pre-trial proceedings." 756 F.2d at 1052.

In conclusion, the court held:

"We do not believe that Congress would have enacted a statute intended to have the sweeping effect or stripping the federal judiciary of its equitable powers in all arbitrable commercial disputes without undertaking a comprehensive discussion and evaluation of the statute's effect." Id.

The factual situation of *Bradley* is strikingly similar to that before the court. Merrill Lynch brought the action seeking injunctive relief to prevent Bradley from using Merrill Lynch's records and soliciting Merrill Lynch's clients. The *Bradley* court held that the district court was well within its discretion in concluding that the balance of hardship test tips in Merrill Lynch's favor because Bradley did not establish that the preliminary injunction pending expediated arbitration would cause him harm and because Merrill Lynch faced irreparable, non-compensable harm in the loss of customers. The injunction, therefore, preserves the status quo among the parties pending arbitration.

For the same reasons, we believe that arbitration of this dispute would be a "hollow formality" absent preliminary injunctive relief. Id. 756 F.2d at 1055. The status quo among the parties can only be preserved in this way. Without it, Merrill Lynch faces immediate irreparable harm which cannot be compensated by damages.

In reaching this result, we are also persuaded by the case of *American Eutectic Welding Alloys Sales Co. Inc. v. Flynn*, 399 Pa. 617, 161 A.2d 364 (1960). In *Flynn* the Pennsylvania Supreme Court held that a contractual agreement that any controversy arising out of the agreement shall be settled by arbitration does not prevent a court of equity from granting a preliminary injunction in order to preserve the status quo. In that case, plaintiff company alleged that defendant employee breached a restrictive covenant in the employment contract. The covenant in question was an engagement on the part of defendant not to disclose confidential information, gained in his employment by plaintiff, and not to compete with plaintiff after the termination of his employment, in a certain geographical region. As in the

case now before the court, the *Flynn* court held that a temporary injunction was warranted where "imminent danger of irreparble harm appears to make it necessary to preserve rights from threatened invasion." Id., 399 Pa. at 620.

Accordingly, we enter the following[2]

### ORDER

And now, this June 19, 1986, defendants' motion requesting arbitration pursuant to the Federal Arbitration Act is granted. We deny defendants' motion asking for a stay of proceedings until the completion of arbitration. The preliminary injunction granted on June 13, 1986, and the $50,000 bond, shall continue pending arbitration. Jurisdiction is retained by this court solely for the purpose of the enforcement of the temporary injunction.

---

2. This opinion and order were not entered on the June 17 date set by the court due to emergency health problems which beset the writer of this opinion.