Appeal Dismissed; Petition for Writ of Mandamus Conditionally Granted
and Majority and Dissenting Opinions filed July 13, 2004









 

Appeal Dismissed;
Petition for Writ of Mandamus Conditionally Granted and Majority and Dissenting Opinions filed July 13,
2004.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-01139-CV

____________

 

FELDMAN/MATZ
INTERESTS, L.L.P. D/B/A FELDMAN HANSZEN L.L.P. AND D/B/A STEWART A. FELDMAN
& ASSOCIATES, L.L.P., STEWART A. FELDMAN, ESQ., RAPID MANAGEMENT CORP., AND
RAPID SETTLEMENTS, LTD., Appellants

 

V.

 

SETTLEMENT CAPITAL
CORPORATION,
Appellee

 



 

On Appeal from the 127th
District Court

Harris County, Texas

Trial Court Cause No. 03-53078

 



 

No. 14-03-01103-CV

 

IN RE FELDMAN/MATZ INTERESTS,
L.L.P. D/B/A FELDMAN HANSZEN L.L.P. AND D/B/A STEWART A. FELDMAN &
ASSOCIATES, L.L.P., STEWART A. FELDMAN, ESQ., RAPID MANAGEMENT CORP., AND RAPID
SETTLEMENTS, LTD.

 



 

ORIGINAL PROCEEDING

WRIT OF MANDAMUS

 



 








M A J O R I T Y   O P I N I O N

In this consolidated mandamus action and
accelerated interlocutory appeal, we not only have to decide if the Federal
Arbitration Act or the Texas Arbitration Act applies, but also if the trial
court had to refer the entire caseCincluding the
plaintiff=s request for injunctive relief against
the defendantsCto arbitration.  For the reasons discussed below, we conclude
that the Federal Arbitration Act applies and that the trial judge should have
referred all of the case, including the injunctive relief request, to
arbitration.  As a result, we dismiss the
appeal and conditionally grant the petition for writ of mandamus.

BACKGROUND

Settlement Capital Corporation purchases
structured settlement payment rights and, in some cases, makes loans secured by
its customers= rights to future payments.  In Texas, as in many other states, transfers
of structured settlement rights requires court approval.  See Tex.
Civ. Prac. & Rem. Code '' 141.001B141.007 (the AStructured
Settlement Protection Act@). 
In October of 2001, Settlement Capital executed a legal services
agreement with Stewart A. Feldman & Associates, L.L.P., to represent it in
obtaining court approval of its transactions. 
The agreement identified the scope of services as the following:

We have been
retained to assist Settlement Capital Corp. in obtaining court approval of
structured settlement transfers in accordance with the Texas Civil Practice
& Remedies Code.  In this regard, the
litigation services and other work will be provided in accordance with and at
the rates set forth in the attached Guidelines on Firm Administration and
Billing.

The Guidelines on Firm Administration and Billing
included these arbitration provisions:

Should any dispute arise out of or
in conjunction with the attorneys= fees and/or costs and/or expenses of the legal work
performed for you or your affiliates by The
Law Offices of Stewart A. Feldman & Associates, L.L.P. or its agents
or principals, we agree to submit any and all such fee disputes that cannot be
settled by good faith negotiation between the parties exclusively to the
Houston Bar Association=s Fee Dispute Committee for binding
and nonappealable resolution.








With respect to
any and all other disputes or claims between us whatsoever related to or
arising out of our services, we agree that either of us may submit the same to
a nationally recognized, neutral, arbitration association (eg., AAA, JAMS,
etc.) for final, binding and nonappealable resolution pursuant to its single
arbitrator, expedited arbitration rules. 
While we fully expect (and hope) that any dispute will be resolved
directly between us, the State Bar of Texas investigates and prosecutes
professional misconduct of Texas attorneys. 
Should you have any questions, the Office of the General Counsel of the
State Bar will provide you with information regarding the Bar=s procedures.  If the first arbitration organization which
receives a written demand for arbitration of the dispute from either of us does
not complete the arbitration to finality within four months of the written demand,
either party then may file a written demand for arbitration of the dispute with
another nationally recognized, neutral, arbitration association, with the prior
arbitration association then being immediately divested of jurisdiction,
subject to a decision being rendered by the replacement arbitration association
within four months of the written demand being filed with the replacement
arbitration association.  The decision of
the arbitrators shall be final in all respects and shall be
non-appealable.  Any person may have a
court of competent jurisdiction enter into its record the findings of such
arbitrators for all purposes including for the enforcement of such award.  We look forward to working with you.

Kent M. Hanszen signed the agreement on behalf of the
Feldman law firm; Matthew T. Bracy, Settlement Capital=s in-house
counsel, signed for Settlement Capital. 
Thereafter, the Feldman law firm assisted Settlement Capital in
obtaining court approval of numerous structured settlement purchases and other
litigation matters.








Sometime after this, Stewart Feldman set
up a company named Rapid Settlements that apparently does much, if not all, of
the same work as Settlement Capital. 
After learning about Rapid Settlements, Settlement Capital filed a
lawsuit against the Feldman law firm, Stewart A. Feldman, individually, Rapid
Management Corp., and Rapid Settlements, Ltd. (collectively, AFeldman@).  It alleged that Stewart Feldman secretly set
up Rapid Settlements to directly compete with Settlement Capital in the
business of buying structured settlement cash flows, using confidential
marketing, business, and legal information obtained from Settlement Capital, a
client of the Feldman law firm.  Among
other things, Settlement Capital alleged that, in early 2003, Stewart Feldman
surreptitiously set up an internet domain name for Rapid Settlements and incorporated
Rapid Management Corp. with his wife and him as directors.  In turn, Settlement Capital alleged, Rapid
Management Corp. became the general partner of Rapid Settlements, Ltd., whose
president, Scott D. Shcolnik, was an employee of the Feldman law firm.  Settlement Capital further alleged that Rapid
Settlements surreptitiously operates out of the Feldman law firm=s offices, employs
members of the firm=s staff to conduct its business, and
markets to and solicits Settlement Capital=s current and
former customers.  

Settlement Capital=s causes of action
included breach of fiduciary duty and unfair competition; it later supplemented
its petition to add a claim for legal malpractice.  It also sought an application for a temporary
restraining order, temporary injunction, and permanent injunction.  The same day Settlement Capital filed its
lawsuit, it obtained a temporary restraining order against Feldman and Atheir agents,
servants, employees, representatives, and those in active concert or
participation with them.@ 
The temporary restraining order enjoined the defendants from doing the
following:

1.       Removing, retaining, duplicating,
misappropriating, using, disclosing, or communicating any confidential,
privileged, and/or proprietary information, documents, or software belonging to
[Settlement Capital];

2.       Soliciting,
marketing, buying, pooling, and/or securitizing of structured settlement
payment rights from or to current or former customers of [Settlement Capital]
or any other person or entity.

The temporary restraining order also set Settlement
Capital=s application for
a temporary injunction for a hearing on October 2, 2003.

Three days before the hearing, on
September 29, 2003, Feldman filed a motion to compel arbitration and stay
proceedings.  On October 1, 2003, the
trial judge delivered her ruling on the motion to all parties by fax as
follows: Adenied in part as to temp. inj. hearing.@  Feldman immediately filed a petition for writ
of mandamus, an emergency motion to stay the underlying proceedings, and an
appeal.  On October 2, this Court
terminated and stayed the temporary injunction hearing until we reached a
decision on the petition for writ of mandamus or until we entered further
orders. 

 








ANALYSIS

Settlement Capital does not dispute that
its legal services agreement with the Feldman law firm contains a valid and
enforceable arbitration provision.  It
does not dispute that its claims fall within the scope of the arbitration
provision.  However, the parties
vigorously dispute whether the agreement is governed by the Federal Arbitration
Act (AFAA@)[1]
or the Texas General Arbitration Act (ATGAA@),[2]
and therefore whether the trial court=s action is
properly reviewed by a petition for a writ of mandamus or an accelerated,
interlocutory appeal.  The parties also
vigorously dispute whether the trial court erred in refusing to stay the
hearing on Settlement Capital=s request for a
temporary injunction.  We will address
each of these issues in turn.

I.        The
Federal Arbitration Act Applies

A.      The
FAA Reaches as Far as the Commerce Clause Itself.

A party seeking relief from a denial of
arbitration sought under the FAA has no adequate remedy by appeal and is
entitled to mandamus relief to correct a clear abuse of discretion.  In re L & L Kempwood Associates, L.P.,
9 S.W.3d 125, 128 (Tex. 1999) (per curiam).  However, a trial court=s order denying
arbitration, if based upon the TGAA, is subject to interlocutory appeal.  Tex.
Civ. Prac. & Rem. Code '
171.098(a)(1).  The arbitration clause in
the parties= legal services agreement does not
specifically invoke either the Texas Arbitration Act or the FAA, and the trial
court made no ruling on which Act applies. 
Because the parties dispute whether the FAA or the TGAA applies, Feldman
filed both a petition for writ of mandamus and an interlocutory appeal, which
we have consolidated.  Therefore, we
first consider whether the FAA or the TGAA applies to this dispute to determine
the proper procedural disposition of the case.








The party seeking to compel arbitration by
mandamus must first establish the existence of an arbitration agreement subject
to the FAA and show that its claims are within the scope of that
agreement.  In re J.D. Edwards World
Solutions Co., 87 S.W.3d 546, 549 (Tex. 2002) (per curiam).  Federal policy embodied in the FAA favors
agreements to arbitrate and courts must resolve any doubts about an arbitration
agreement=s scope in favor of arbitration.  In re FirstMerit Bank, N.A., 52 S.W.3d
749, 753 (Tex. 2001).  If the arbitration
agreement encompasses the claims and the party opposing arbitration has failed
to prove its defenses, the trial court has no discretion but to compel
arbitration and stay its own proceedings. 
Id. at 753B54. 

The FAA applies to a written arbitration
provision in a contract Aevidencing a transaction involving
commerce.@  9
U.S.C. ' 2.  In Allied-Bruce Terminix Companies v.
Dobson, the United States Supreme Court held that we must read this
language broadly so that the FAA reaches to the full limits of the Commerce
Clause of the United States Constitution. 
Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 274B77 (1995).  Additionally, the Court interpreted the FAA=s language as
insisting that the transaction Ain fact@ involve
interstate commerce, even if the parties did not contemplate an interstate
commerce connection.  Id. at
281.  Our Texas Supreme Court has
acknowledged Allied-Bruce Terminix as standing for the proposition that Athe FAA extends to
any contract affecting commerce, as far as the Commerce Clause of the United
States Constitution will reach.@  In re L & L Kempwood Associates, L.P.,
9 S.W.3d at 127.  

B.      The
Legal Services Agreement Between Feldman and Settlement Capital Involves
Interstate Commerce.








Feldman contends that the FAA applies in
this case because the legal services agreement involves interstate
commerce.  Conversely, Settlement Capital contends the fee
agreement is between a Texas corporation and Texas attorneys to perform
services under Texas law in Texas; therefore, it reasons that the TGAA applies.[3]  We find, however, that Feldman has met its
burden to demonstrate that the FAA applies.

In its petition, Settlement Capital
alleged that it Ahas done business with individuals all
over the country@ and its representatives Aprovided the
Feldman Law Firm with extensive information about their business operations and
court proceedings outside the state of Texas.@  Settlement Capital also alleged that
structured settlement legal work Ademands particular
expertise, including specialized knowledge of [its] business practices,
procedures and protocols,@ and that it discussed its confidential
market, business and legal strategies with the Feldman law firm.  All of this information was provided in the
course of the representation that is the subject of the underlying
dispute.  Indeed, Settlement Capital
affirms in its petition that Feldman=s marketing
efforts and business operations are based on Ainformation that could
only have been garnered in the course of the Feldman Law Firm=s representation
of [Settlement Capital].@

Moreover, in explaining the court approval
process, Settlement Capital alleged that it is required to disclose details of
its transactions to Ainterested parties@ including Athe entities and
companies who own and issue the annuity funding the structured settlement
payments.@ 
Matthew Bracy, Settlement Capital=s in-house
counsel, testified in deposition that Settlement Capital purchases structured
payments from annuity companies all over the United States, including for the
work the Feldman law firm was handling. 
Therefore, by Settlement Capital=s own admissions,
the Feldman law firm=s legal services Ain fact@ involved
interstate commerce.  See Allied-Bruce
Terminix, 513 U.S. at 281. 








Given the foregoing, we hold that the FAA
applies to the legal services agreement between Settlement Capital and the
Feldman law firm.  We therefore dismiss
the appeal and turn to the consideration of the merits of Feldman=s mandamus action.

II.       The
Trial Court Erred in Refusing to Stay the Hearing on Settlement Capital=s Request for a
Temporary Injunction.

Feldman next contends that, under the FAA,
the trial court abused its discretion by failing to grant Feldman=s motion to compel
arbitration and stay proceedings, and by refusing to stay the evidentiary
hearing on Settlement Capital=s application for
a temporary injunction.  Settlement
Capital responds that, even if the FAA applies to the legal services agreement
(which it disputes), the trial court was entitled to hear evidence and, if
warranted, grant temporary injunctive relief to maintain the status quo. 

A.      Under
Section 3 of the FAA, an Application for Arbitration Stays Trial of the Action.

Section 3 of the FAA, titled AStay of
proceedings where issue therein referable to arbitration,@ provides as
follows:

If any suit or
proceeding be brought in any of the courts of the United States upon any issue
referable to arbitration under an agreement in writing for such arbitration,
the court in which such suit is pending, upon being satisfied that the issue
involved in such suit or proceeding is referable to arbitration under such an
agreement, shall on application of one of the parties stay the trial of the
action until such arbitration has been had in accordance with the terms of the
agreement, providing the applicant for the stay is not in default in proceeding
with such arbitration.

9 U.S.C. ' 3 (emphasis
added).  

B.      This
Court Has Held that a Trial Court Cannot Hold a Temporary Injunction Hearing
When Arbitration Has Been Invoked.








In Merrill Lynch, Pierce, Fenner &
Smith, Inc. v. McCollum, the trial court granted an order compelling
arbitration and, in connection with its order staying the case, denied the
plaintiff=s application for a temporary injunction
without conducting an evidentiary hearing. 
See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCollum,
666 S.W.2d 604, 608 (Tex. App.CHouston [14th
Dist.] 1984, writ ref=d n.r.e.), cert. denied, 469 U.S.
1127 (1985).  This court affirmed,
concluding that staying Athe trial@ included staying
an application for a temporary injunction. 
See id. at 608B09.  In so holding, the McCollum court
noted that Athe policy behind having the arbitration
policy in the first place is that once the arbitration procedure is started it
should be speedy and not subject to delay and obstruction in the courts.@  Id. 
The court then cited with approval the analysis in Merrill Lynch,
Pierce, Fenner & Smith, Inc. v. DeCaro, 577 F. Supp. 616 (W.D. Mo.
1983), in which that court concluded that, because a ruling on a motion for
preliminary injunction involved consideration of the merits of the arbitrable
claim, the trial court=s findings Acould interfere
with the arbitrator=s independent determination of the issues.@  McCollum, 666 S.W.2d at 609 (quoting DeCaro,
577 F. Supp. at 624).

C.      The
Courts in the Fifth Circuit Hold that a Trial Court has Limited Authority Over
a Case Subject to Arbitration and It May Not Hold a Temporary Injunction
Hearing when the Parties= Agreement Does
Not Provide for Maintaining the Status Quo.

The federal courts in Texas agree that
issuance of a preliminary injunction is not appropriate when the underlying
claims are subject to arbitration.  For
example, in Smith v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
575 F. Supp. 904 (N.D. Tex. 1983), the district court denied an application for
temporary injunction on the grounds that section 3 of the FAA requires a trial
court to stay a suit in which the issues involved are referable to arbitration
under a written agreement.  Id. at
904.  Refusing to consider the issues
raised in the application for temporary injunction, the court concluded that A[i]n considering
an application for a stay pursuant to Section 3 of the Act, a federal court can
consider only issues relating to the making and performance of the agreement to
arbitrate.@  Id. at 905.








In RGI, Inc. v. Tucker &
Associates, Inc., 858 F.2d 227, 230 (5th Cir. 1988), the Fifth Circuit
considered, but did not reach, the issue whether section 3 of the FAA precludes
the issuance of a preliminary injunction pending arbitration.  The court noted that some federal circuit
courts have held that it does, while others have held that preliminary
injunctive relief is permissible to maintain the status quo pending
arbitration.  Id. at 228B29.  However, in the case before it, the court
determined that it need not resolve the issue. 
It noted that the Fifth Circuit agreed with the other circuits in
certain circumstances: when the parties expressly contemplated maintaining the
status quo pending arbitration.  When
they contemplated maintaining the status quo, a court can issue a preliminary
injunction before arbitration.  In such a
case, the RGI court reasoned, Athe court need not
involve itself in balancing the various factors to determine whether a
preliminary injunction should be issued.@  Id. at 230.  The parties in RGI clearly
contemplated that the status quo was to continue pending arbitration; their
agreement provided, A[i]n the event that a dispute is submitted
for arbitration . . . this Subcontract shall continue in full force and
effect until such decision is rendered.@  Id. 
Therefore, the court held that the trial court did not err in ordering a
preliminary injunction to prevent one party from terminating the contract in
contravention of the agreement.  Id.  It noted that the district court=s order both
implemented the parties= bargained-for relationship and was
consistent with the overriding federal policy to expedite arbitration.  Id. at 228B29.  Thus, a court can issue preliminary
injunctive relief pending arbitration for the limited purpose of Ainsur[ing] that
the arbitration clause of the contract . . . be carried out as written.@  Id. at 230.  

More recently, the Southern District of
Texas concluded that, unless the parties expressly agreed to Amaintain the
status quo,@ pre-arbitration injunctive relief should
be denied.  In a September 1, 2003
memorandum and order issued in Kellogg Brown & Root International, Inc.
v. Qatar Chemical Co., No. H-03-3337 (S.D. Tex. Sept. 1, 2003), the
district court, relying on RGI, concluded that courts should award
injunctive relief on an arbitrable claim only when the arbitration agreement
itself expressly provides for such relief:








[T]he Court finds
that RGI stands for the proposition that it is appropriate for district
courts, by means of injunctions, to enforce parties= agreements to
arbitrate according to their terms. 
Furthermore, in keeping with the well-established policy of Amov[ing] the
parties to an arbitrable dispute out of court and into arbitration as quickly
and easily as possible,@ the district courts should not concern
themselves with all of the terms of the contract or with injecting themselves
into the merits of the parties= dispute, but
should limit themselves (and any remedies they impose) to Aexpediting the
procedural move to arbitration.@  Id. at 229B30 (quoting Moses
H. Cone Hospital v. Mercury Construction Corp, 460 U.S. 1, 22 (1983)).

Id. 

In response to this case law, Settlement
Capital argues that this court=s reasoning in McCollum
is dicta, and that the majority of the federal circuits addressing the
issue have held that the FAA does not preclude a district court from issuing a
preliminary injunction in an arbitrable dispute.[4]  Settlement Capital argues that courts should
be permitted to issue preliminary injunctive relief to preserve the status quo pending
arbitration which in turn would preserve the meaningfulness of the arbitration
process and to prevent it from being merely a Ahollow formality.@  See Teradyne, Inc. v. Mostek Corp.,
797 F.2d 43, 51 (1st Cir. 1986); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048, 1053B54 (4th Cir. 1984). 
We
disagree that we can ignore McCollum and we will follow it and the Fifth
Circuit precedent.

D.      Our
Precedent and Fifth Circuit Precedent Control This Case.

We acknowledge that a split exists among
the federal circuits and that some circuits have allowed preliminary
injunctions even when the parties= agreement did not
provide for the preservation of the status quo. 
However, the courts in the Fifth Circuit have held that a court may not
enter a preliminary injunction when the parties= agreement did not
contemplate maintaining the status quo.  See,
e.g., RGI, Inc. v. Tucker & Assocs., Inc., 858 F.2d at 230; Smith v.
Merrill Lynch, Peirce, Fenner & Smith, 575 F. Supp. at 905; Kellogg
Brown & Root Int=l, Inc. v. Qatar
Chemical Co., No. H-03-3337 (S.D. Tex. Sept 1, 2003).  In McCollum, which is not dicta, we
also held that a trial court lacked authority to grant a temporary injunction
pending arbitration.  We choose to follow
these cases.








We need not go as far as McCollum,
which did not contemplate the possibility that a trial court might hear an
injunction request if the parties= agreement states
an intent to maintain the status quo pending arbitration.[5]  This legal services agreement contains no
express language demonstrating that the parties contemplated court intervention
to maintain the status quo.  And, we
agree with Feldman that the relief Settlement Capital seeks is not to maintain
the status quo provided in the legal services agreement, but to temporarily
enjoin Feldman from conducting business.[6]  Moreover, we note that Settlement Capital
does not dispute that the subject matter of its claims are within the scope of
the legal services agreement=s arbitration
provision.  Consequently, the injunctive
relief it seeks would require the court to consider the merits of the
underlying dispute, which would interfere with the arbitrator=s independent
determination of the issues and frustrate the strong federal policy in favor of
speedy implementation of arbitration without delay and obstruction in the
courts.  See McCollum, 666 S.W.2d
at 608B09. 

E.      Response
to the Dissent: The Trial Judge was Required to Stay the Proceedings.








The dissent argues that the trial judge
was not required to stay the proceedings and refer the case to arbitration
because Feldman had not submitted the case to an arbitration association.  The dissent argues that the agreement
required the case to be submitted to an arbitration association before the
court was required to stay proceedings.[7]  We think this argument ignores two points:
(1) Under section 3 of the FAA, when a trial judge determines that an agreement
requires a dispute to be arbitrated, the judge must stay proceedings (see
9 U.S.C. ' 3); and (2) The agreement in this case
did not alter the rule laid out in section 3 of the FAA because (a) it was not
a limitation on how a party might invoke arbitration and (b) stating that
either party Amay@ submit a
disagreement to arbitration has been interpreted to mean that either party may
require arbitration.  We discuss each
briefly.

First, when an agreement provides for
arbitration and one of the parties files with the trial judge an application to
stay so that the matter can be arbitrated, the judge is to stay the trial
proceedings so that the parties can arbitrate their dispute.  See 9 U.S.C. ' 3.  This requirement to stay arises from section
3 of the FAA.  Id.  The stay is not dependent on a party=s submission of
the dispute to an arbitration association. 
In fact, section 3 does not mention submission to an arbitration
association; it refers only to an application to stay filed with the trial
court.  Id.  Thus, nothing in the FAA supports the dissent=s position.  

Second, this agreement did not alter the
rule set out in section 3 of the FAA.  To
begin with, this agreement does not state that only a submission of the dispute
to an arbitration association will trigger the arbitration clause.  Instead, it merely states that either of the
parties may submit the dispute to an arbitration association for arbitration of
the dispute.  That is merely another way
of saying that either party may require the other to arbitrateCnot a limitation
on how a party may invoke arbitration. 
Secondly, although the agreement stated that either party Amay@ submit
disagreements to arbitration, a number of the federal circuitsCincluding the
Fifth CircuitChave interpreted similar language to mean
that either party has the power to require arbitration.  See, e.g., Deaton Truck Line, Inc., v. Local
Union 612, 314 F.2d 418 (5th Cir. 1962); Austin v. Owens-Brockway Glass
Container, Inc., 78 F.3d 875, 879 (4th Cir.), cert denied, 519 U.S.
980 (1996); Ceres Marine Terminals, Inc. v. Int=l Longshoreman=s Ass=n, Local 1969, 683 F.2d 242,
246B47 (7th Cir.
1982); Local 771, I.A.T.S.E., AFL-CIO v. RKO Gen., Inc., 546 F.2d 1107,
1116 (2d Cir. 1977); Bonnot v. Cong. of Indep. Unions Local No. 4, 331
F.2d 355, 359 (8th Cir. 1964).  Thus,
generally, an agreement to arbitrate is mandatory even though it contains  permissive terms such as Amay.@  This interpretation supports the federal
scheme to encourage arbitration.  We see
no reason to depart from the reasoning of these cases.     

 








CONCLUSION

In conclusion, we find that the Federal
Arbitration Act applies to the legal services agreement between the Feldman law
firm and Settlement Capital.  We dismiss
Feldman=s appeal and
conditionally grant its petition for writ of mandamus.  We are confident the trial court will withdraw
its October 1, 2003 order denying in part Feldman=s motion to compel
arbitration and stay proceedings and will enter an order granting Feldman=s motion to compel
arbitration and stay proceedings in accordance with this opinion.  Our writ will issue only if the trial court
fails to do so.

 

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment
rendered and Majority and Dissenting Opinions filed July 13, 2004.

Panel
consists of Justices Fowler, Edelman, and Seymore.  (Edelman, J. dissenting).











[1]  See 9
U.S.C. '' 1B16.





[2]  See Tex. Civ. Prac. & Rem. Code '' 171.001B.098.





[3]  In its brief
in response to Feldman=s appeal, Settlement Capital also argues that its
claims are properly characterized as personal injury claims, and the agreement
to arbitration is unenforceable because it was not executed by both Settlement
Capital, as the client, and its counsel in accordance with the requirements of
Texas Civil Practice and Remedies Code section 171.002.  See Tex.
Civ. Prac. & Rem. Code '
171.002(c)(1)B(2) (providing that the TGAA does not apply to a claim
for personal injury unless (1) each party to the claim, on the advice of
counsel, agrees in writing to arbitrate, and (2) the agreement is signed by
each party and each party=s attorney). 
Because we hold that the FAA applies to the legal services agreement and
dismiss the appeal, we do not reach these arguments.





[4]  In support of
its assertion, Settlement Capital cites to cases including the following:
Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373 (6th
Cir. 1995); Ortho Pharm. Corp. v. Amgen, Inc., 882 F.2d 806 (3d Cir.
1989); PMS Distrib. Co. v. Huber & Suhner, A.G., 863 F.2d 639 (9th
Cir. 1988); Teradyne, Inc. v. Mostek Corp., 797 F.2d 43 (1st Cir. 1986);
Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d
1048 (4th Cir. 1985); Roso-Lino Beverage Distribs., Inc. v. Coca-Cola
Bottling Co. of New York, Inc., 749 F.2d 124 (2d Cir. 1984); Merrill
Lynch, Peirce, Fenner & Smith, Inc. v. Scott, No. 83-1480, 1983 WL
407976 (10th Cir. May 12, 1983) (unpublished opinion).





[5]  It appears that the McCollum
parties did not address this possibility with the court.





[6]  At oral
argument, Settlement Capital contended that the fiduciary obligations an
attorney owes its client are ongoing, and so should be incorporated into the
legal services agreement to imply an agreement between the parties to maintain
the Astatus quo@ of the
attorney-client relationshipCand therefore provide a basis for injunctive
relief.  However, Settlement Capital
provides no legal authority for us to read such an implied term into the
agreement, and we decline to do so. 





[7]  This issue was
not raised in the trial court.