**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff,**

v.

**Ernest L. COFFINDAFFER, Robert N. Rector, Linda J. Tragemann, Nancy M. Dotson, Undra J. Johnson and Kimberly L. Stouffer Staddon, Defendants.**

No. 1:00CV88.

United States District Court, N.D. West Virginia.

June 16, 2000.

Richard W. Gallagher, Robinson & McElwee, Clarksburg, WV, David F. McComb, Alison T. Fiala–Mullen, Rubin & Associates, PC, Paoli, PA, for Plaintiff.

Edward D. McDevitt, Bowles, Rice, McDavid, Graff & Love, Charleston, WV, Anthony Paduano, Leonard Weintraub, Smith, Campbell & Paduano, New York City, for Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

STAMP, District Judge.

Pending before this Court is the separate motion of plaintiff, Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. For the reasons set forth below and following a hearing on that motion on May 31, 2000, the motion is GRANTED.[1]

#### I. *Procedural History* [2]

Merrill Lynch filed a verified complaint and separate motion seeking a temporary

---

1. At 3:17 p.m. on Friday, June 16, 2000, this Court received a facsimile from defendant's counsel. Although the facsimile was somewhat illegible, counsel represented in the cover letter that the NASD had vacated the temporary restraining order issued by this Court. Because counsel did not represent the reason for the decision and because the near illegible NASD order does not appear to indicate the reason for the decision, this Court enters this order.

2. On June 15, 2000, plaintiff filed a supplemental memorandum in support of its motion for a preliminary injunction, highlighting

restraining order and a preliminary injunction on May 22, 2000. Following a transfer of this civil action to the undersigned judge, this matter was set for hearing on May 23, 2000 on the motion for temporary restraining order. At the conclusion of that hearing, this Court granted that motion and set this matter for a hearing on May 31, 2000 on the motion for preliminary injunction. At the hearing, this Court heard the testimony of ten witnesses and received a number of exhibits, affidavits and other papers submitted by the parties. At the conclusion of the hearing, the Court took this matter under advisement and also pursuant to Federal Rule of Civil Procedure 65(b) extended, for good cause shown, the temporary restraining order for a period of ten days, ending June 21, 2000.[3]

## II.

The facts in this case were generally set forth in this Court's Memorandum Opinion and Order Granting Plaintiff's Motion for a Temporary Restraining Order, Scheduling Preliminary Injunction Hearing and Denying Motion for Stay, dated May 25, 2000. However, a more detailed description of the facts may be helpful.

Defendants, Ernest L. Coffindaffer ("Coffindaffer"), Robert N. Rector ("Rector"), Linda J. Tragemann ("Tragemann"), Nancy M. Dotson ("Dotson"), Undra J. Johnson ("Johnson") and Kimberly L. Stouffer Staddon ("Staddon"), were employees of Merrill Lynch in the Clarksburg office of that national securities brokerage firm. At the end of the close of business on Friday afternoon, May 19, 2000, each of the defendants resigned from their employment with Merrill Lynch without prior notice and immediately began employment with a competitor firm, Prudential Securities, Inc. ("Prudential"). Prior to their resignations, these defendants constituted six of the seven stockbrokers or financial consultants employed at Merrill Lynch's Clarksburg, West Virginia office. All of the defendants were key employees of Merrill Lynch.

Coffindaffer is a former Merrill Lynch manager and financial consultant at the Clarksburg office of Merrill Lynch. His employment began on or about June 16, 1989. Rector, a former financial consultant, began his employment with that company on or about May 18, 1987. Tragemann is a former financial consultant at Merrill Lynch's Clarksburg office and began her employment on or about December 15, 1986. Dotson, a former financial consultant at Merrill Lynch's Clarksburg office, began her employment on or about February 18, 1992. Johnson, a former financial consultant at Merrill Lynch's Clarksburg office, began his employment on or about April 4, 1994. Staddon, a former financial consultant at Merrill Lynch's Clarksburg office, began her employment on or about September 18, 1995. All of the defendants reside in the Clarksburg, West Virginia area in this district.

---

what plaintiff believes are violations of this Court's temporary restraining order by defendants. On June 16, 2000, defendants submitted a letter in response. This Court notes that those materials were not considered when rendering this opinion. A separate order will follow which addresses those supplements.

**3.** Also, at the conclusion of the preliminary injunction hearing, the Court requested that counsel provide letters indicating their opinion as to the date that the extended temporary restraining order would terminate as calculated, pursuant to Fed.R.Civ.P. 6, or other applicable authority. By separate order dated June 14, 2000, this Court determined that Fed.R.Civ.P. 6 would apply and that, under that rule, the temporary restraining order would terminate on June 21, 2000.

The evidence supports a finding that as Merrill Lynch financial consultants, the defendants serviced over 2600 Merrill Lynch households representing over $350 million in assets under Merrill Lynch management and generating over $4.65 million in revenue for Merrill Lynch in the year 2000, to date. Each of the defendants had entered into a written employment agreement with Merrill Lynch. Defendant Coffindaffer entered into a contract called a Financial Consultant Agreement. Defendants Rector and Tragemann had a similar, if not identical, agreement entitled Account Executive Agreement. Coffindaffer, Rector and Tragemann's contracts contain express language that they consent to the issuance of a temporary restraining order or a preliminary or permanent injunction to prohibit the breach of any provision of the contract *or* to maintain the status quo pending the outcome of any proceeding which may be initiated. Defendants Dotson, Johnson and Staddon each entered into a Financial Consultant Employment Agreement with Merrill Lynch containing certain restrictive covenants. These Financial Consultant Agreements contain much of the same language as the other mentioned agreements. Although the Dotson, Johnson and Staddon agreements lack the express consent to injunctive relief set forth in the Coffindaffer, Rector and Tragemann contracts, these agreements contain other language relating to consent to injunctive relief under certain conditions.[4]

Defendants Coffindaffer, Rector and Tragemann agreed in their employment agreements, among other things, that:

1. **All records of Merrill Lynch, including the names and addresses of its clients and prospective clients are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination of my employment for any reason with Merrill Lynch.** None of such records, nor any part of them is to be removed by me from the premises of Merrill Lynch either in original form or in computerized, duplicated, or copied form except with the permission of an office manager for the purpose of conducting the business of Merrill Lynch and the names, addresses, and other facts in such records are not to be transmitted verbally, in writing, or in computerized form by me except in the ordinary course of conducting business for Merrill Lynch. **All of said records or any part of them are the sole proprietary information of Merrill Lynch and shall be treated by me as confidential information of Merrill Lynch.**

2. In the event of termination of my services with Merrill Lynch for any reason, I will (i) not solicit, for a period of one year from the date of termination of my employment, any of the clients of Merrill Lynch whom I served or other clients of Merrill Lynch whose names become known to me while in the employ of Merrill Lynch in the office of Merrill Lynch in which I was employed, and who reside within one hundred miles of the Merrill Lynch office in which I was employed, and (ii) return any original records and purge or destroy any computerized, duplicated, or

---

**4.** All of the employment agreements are governed by West Virginia law, except for defendant Tragemann whose was governed by District of Columbia law. During the temporary restraining order hearing, the parties referred to a May 11, 1987 Agreement which stated that the contract of defendant Rector would be governed by Pennsylvania law. However, at the hearing on the preliminary injunction, the parties conceded that Rector has a subsequent similar written agreement with Merrill Lynch which stated that it would be governed by West Virginia law.

copied records referred to in paragraph 1 which have been removed from the premises of Merrill Lynch in any form . . . .

(emphasis added)

Defendants Dotson, Johnson and Staddon agreed in their Financial Consultant Employment Agreement and restrictive covenants, among other things, that:

1. **All records**, whether original, duplicated, computerized, memorized, handwritten, or in any other form, **and all information**, contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch. This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sale representative of Merrill Lynch. I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.

This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditure of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.

2. If, at any time, I resign from Merrill Lynch, provoke my termination, or am terminated for cause, I agree that for a period of one year following my termination I will not solicit by mail, by phone, or personal meeting, or by any other means, either directly or indirectly, any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity. My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

(a) to transfer from Merrill Lynch to me or to my new employer, or

(b) to open an new account with me or with my new employer, or

(c) to otherwise discontinue its patronage and business relationship with Merrill Lynch.

Further, as a condition of their employment at Merrill Lynch, each defendant agreed, in writing and on an annual basis, to abide by Merrill Lynch's Compliance Outline for Financial Consultants which provides, in pertinent part, as follows:

CONFIDENTIALITY OF CLIENT INFORMATION

You may not discuss the business affairs of any client with anyone, including other employees except on a need-to-know basis. Information or records concerning the business of the Firm and/or its clients may not be released except to persons legally entitled to receive them.

Also, defendants Coffindaffer, Dotson, Johnson and Staddon agreed to abide by Merrill Lynch's 1989 Guidelines for Business Conduct which provides:

> Merrill Lynch's assets include more than its capital. There are its premises, equipment, information, business plans, ideas for new products and services, client lists, and, most important, in a very real sense, its people. It is expected that employees will use these assets only for the purposes intended and not for their personal benefit unless they have been approved for general employee or public use. This even extends to business opportunities that come to employees as a result of their employment—they are the proprietary opportunities of Merrill Lynch.

Defendants Rector and Tragemann also agreed to abide by Merrill Lynch's 1986 Guidelines for Business Conduct which provides:

> Merrill Lynch's assets include more than its capital—there are its premises, equipment, information, business plans, ideas for new products and services, customer lists, and most importantly, in a very real sense, its people. It is expected that employees will use these assets only for the purpose intended and not for their personal benefit unless they have been approved for general employee or public use. This even extends to business opportunities that come to employees as a result of their employment—they are the proprietary opportunities of Merrill Lynch. **Employees must also take care that proprietary corporate information does not find its way into the hands of outsiders, most importantly, our competitors.**

Finally, defendants Coffindaffer, Tragemann, Dotson, Johnson and Staddon agreed in their Conflict of Interest agreement as follows:

> I agree that I will not, during or after my employment with Merrill Lynch, use or disclose to another any confidential information or business secrets relating to Merrill Lynch.

> .    .    .    .    .

> I have read and agree to abide by this statement of Merrill Lynch & Co. policy. I also understand completion of this form is a condition of employment.

None of the defendants deny that they signed their employment agreements with Merrill Lynch. While defendant Coffindaffer testified that he recalled signing a lot of documents when he was initially employed by Merrill Lynch, he did not read the documents and does not recall the text of any specific documents. He recalls signing an employment agreement but did not read the agreement before he signed it. Coffindaffer had no recollection of signing any conflict of interest form that allegedly prohibits the disclosure of confidential Merrill Lynch information. Also, Coffindaffer did not remember signing or agreeing to a confidentiality provision contained in Merrill Lynch's compliance outline. Defendant Johnson testified in his deposition that he too was asked to sign a number of papers at the inception of his employment with Merrill Lynch but did not read and was not told to read any of the papers. Mr. Johnson also does not remember signing an employment agreement with Merrill Lynch. Johnson testified that he was merely presented with a lot of paperwork when he was hired, was told to sign the forms and completed the papers without consulting an attorney. Defendant Tragemann testified that she was told where to sign the contract but did not look at the contract, signing it because she needed the job. Defendant Dotson said that she was given a "whole notebook of paperwork" but did not realize that there was an employment agreement in-

cluded. Defendant Staddon, while admitting that she signed the contract, testified that the first time that she actually read the employment agreement was when this litigation commenced.

It is clear, however, that all of the employment agreements signed by the defendants contain a statement just above the line where the defendants sign the same that the defendant-employee had read and reviewed the employment agreement, with restrictive covenants, in its entirety; had been given an opportunity to ask Merrill Lynch questions about the agreement; had been given an opportunity to consult with an attorney of their choice; and that they fully understood the document and knowingly and freely agreed to abide by the terms of the agreement. The agreement also contained a provision that the employee having signed the agreement had an additional thirty days from that signing to continue to review it and to seek legal counsel. The contract also contained express language that within thirty days the employee could rescind the agreement by discontinuing employment with Merrill Lynch without any provisions being enforced against the employee. The contract contained provisions that if the employee continued employment with Merrill Lynch beyond the thirty-day period that continuation would constitute a ratification and acceptance of the terms of the agreement.

This Court also received and reviewed a number of exhibits, including, significantly, a form letter on a Prudential Securities letterhead dated May 19, 2000, the date of defendants' resignation from Merrill Lynch and signed by each defendant. Each defendant sent his or her own mailing except for Coffindaffer, Rector and Staddon who sent one letter signed by all three of them. These letters were sent to persons who were clients of the defendants while they were employed at Merrill Lynch. The letter from Coffindaffer, Rector and Staddon stated, in part, as follows:

> You, our client, are the single most important factor in our success. We take our responsibility as your financial adviser very seriously and we appreciate your business. Contrary to some current thoughts in our industry, we still believe that our clients' interests come first and we intend to maintain that independence for you.
>
> I am excited about this opportunity and I very much hope you will join me at Prudential Securities. You can transfer your accounts by simply signing the enclosed forms and sending them to me in the return envelope. I will contact you soon, and you may reach me at the following phone number as well.

Two phone numbers bearing area code 304 and 888 toll free exchange are then supplied. Enclosed with the letter was a form containing the client's name and other information, including Merrill Lynch client account numbers and client social security numbers.

Defendant Johnson also wrote a similar letter to his former clients at Merrill Lynch which stated in part: "As you know I value our relationship and I sincerely hope that you will join me at Prudential Securities." Johnson's letter indicates that he is including "the paperwork necessary to transfer your account(s)." He then instructs the recipient of the letter as to how he or she should sign the material and to return the material to him. Defendants Dotson and Tragemann wrote identical letters to their clients.

Further, defendants contacted former Merrill Lynch clients by placing telephone calls beginning on or about May 19, 2000, the date of their departure from Merrill Lynch and continuing at least up to the date of the entry of the temporary restraining order on May 23, 2000. At least

some, if not all, of the defendants met with their former clients over the weekend to discuss transfer of accounts to Prudential. Information from Merrill Lynch account statements were used to prepare the letters to customers sent by defendants on or shortly after May 19, 2000.

At the conclusion of the hearing on the motion for temporary restraining order, this Court also denied defendant's motion to stay pending arbitration. This ruling was based upon Fourth Circuit precedent particularly that set forth in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048 (4th Cir.1985). The Court then granted plaintiff's oral motion for expedited discovery in order that the parties could adequately prepare for the hearing on the preliminary injunction. Additionally, time was also provided to the parties prior to the preliminary injunction hearing on May 31, 2000, in order for the parties to submit additional memoranda of law.

Pursuant to various securities regulations and the rules of the National Association of Securities Dealers ("NASD"), the plaintiff has filed for arbitration as well.

### III. *Applicable Law*

■ As this Court stated in its order granting the temporary restraining order, in *Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir.1977), *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353 (4th Cir.1991) and *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802 (4th Cir.1991), the Fourth Circuit has set forth the equitable factors that a district court must consider when determining whether a temporary restraining order or preliminary injunction should issue. *See also C/R TV Cable, Inc. v. Shannondale, Inc.*, 792 F.Supp. 1018, 1021–22 (N.D.W.Va.1992). The four factors which must be considered in granting the preliminary injunction under the Fourth Circuit test are:

(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest.

*Direx Israel*, 952 F.2d at 812 (citing *Rum Creek*, 926 F.2d at 359). Additionally, the "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." *Id.*, (quoting *Technical Publishing Co. v. Lebhar–Friedman, Inc.*, 729 F.2d 1136, 1139 (7th Cir.1984)).

■ The *Direx Israel* court emphasized that "[t]he 'likelihood of irreparable harm to the plaintiff' is the first factor to be considered in this connection." *Id.* If the plaintiff makes "a 'clear showing' of irreparable injury absent preliminary injunctive relief," a district court must then balance the likelihood of irreparable harm to the plaintiff without an injunction against the likelihood of harm to the defendant with an injunction. *Id.; Blackwelder*, 550 F.2d at 195. Then, if a decided imbalance of hardship appears in the plaintiff's favor, the plaintiff need not show a likelihood of success; plaintiff need only show that grave or serious questions are presented by plaintiff's claim. *Id.* at 195–96; *see also James A. Merritt & Sons v. Marsh*, 791 F.2d 328, 330 (4th Cir.1986) ("when the balance of harm decidedly favors the plaintiff, he is not required to make a strong showing of a likelihood of success ...."). The district court should also consider the public interest. *Blackwelder*, 550 F.2d at 196. However, as the *Blackwelder* court concluded "[t]he two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with the decree." *Id.*

■ The issuance of a preliminary injunction is committed to the sound discretion of the district court. *Conservation Council of North Carolina v. Costanzo*, 505 F.2d 498, 502 (4th Cir.1974). If a preliminary injunction is granted, the order granting the same must "set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts to be restrained." *See* Fed.R.Civ.P. 65(d); Fed.R.Civ.P. 52(a) ("in granting or refusing interlocutory injunctions the court shall [ ] set forth the findings of fact and conclusions of law which constitute the grounds of its action").

## IV. *Discussion*

■ First, Merrill Lynch must establish that it is likely to suffer irreparable harm if injunctive relief is not granted. *See Direx Israel*, 952 F.2d at 812. Irreparable harm to Merrill Lynch must be actual and imminent, not remote or speculative. As the court noted in *Direx Israel:*

> The hardship balance and the likelihood of success determination are separate, sequential steps in the application of the hardship test. [*Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir.1977)] makes it plain that the balancing of hardship should proceed any consideration of the likelihood of success. * * * and the reason for this statement is easy to understand. The hardship test, by its very nature is to proceed the consideration of the likelihood of success, since the outcome of the hardship test fixes the degree of proof required for establishing the likelihood of success by the plaintiff. If the hardship balance tilts sharply and clearly in the plaintiff's favor, the required proof of likelihood of success is substantively reduced. Similarly, if the hardship to plaintiff is minimal or nonex-

istent ... then the burden on the plaintiff to establish likelihood of success on the merits becomes considerably greater. The likelihood of success determination is to proceed only after the hardship balance itself has been resolved. *It is obvious error to resolve the hardship test by including it in the likelihood-of-success test.*

*Id.* at 817 (emphasis added). Merrill Lynch argues that the solicitation of clients is an irreparable harm that cannot be satisfied by monetary damages. The Fourth Circuit has recognized that "irreparability of harm includes 'impossibility of ascertaining with any accuracy the extent of the loss.' " *Merrill Lynch Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1055 (4th Cir.1985). A monetary calculation of the loss of profits from lost clients, lost profits, and lost referrals is difficult. In addition to loss of actual customers, the loss of goodwill is intangible and also supports irreparable harm. *See Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546 (4th Cir.1994) (holding that when failure to grant preliminary relief creates possibility of permanent loss of customers to competitor or loss of goodwill, irreparable injury prong is satisfied). Alternatively, the harm to the defendants is not substantial. While there would be, of course, the likelihood of some harm to defendants if the injunctive relief is granted, it is clear from the evidence that the defendants each left Merrill Lynch for greater financial remuneration; in addition to perceived greater job satisfaction.

Because, however, the balance of hardships in this case does not, at least at this point, overwhelmingly favor the plaintiff, this Court must also consider whether the plaintiff has shown a strong likelihood of success. This Court finds that there is a strong probability of success on the merits

based upon the clear and unequivocal language of the various contracts. Such language has been upheld by various courts including the Fourth Circuit in *Bradley*. See *Bradley*, 756 F.2d at 1054; *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Napolitano*, 85 F.Supp.2d 491 (E.D.Pa.2000) (recent case holding likelihood of success on merits based on similar facts). The plaintiff has demonstrated that the defendants have left their employment as successful stockbrokers and have actively attempted, without apparent notice to the plaintiff, to transfer the business of their former clients at Merrill Lynch to himself or herself at Prudential. To hold that the letters to Merrill Lynch clients from the defendants written over the weekend after their abrupt exit from Merrill Lynch do not contain "solicitations" under the employment agreements would be to blink at reality. There is also a clearly demonstrated prospect of destruction of goodwill and the misuse of client confidential information. See *Merrill Lynch v. Ran*, 67 F.Supp.2d 764, 780 (E.D.Mich.1999) ("In considering the hardships to all involved, however, those suffered by defendants are the least deserving of the court's consideration as their travails were needlessly, self imposed, unlike the burdens on customers and Merrill Lynch, which was not chosen, but rather were inflicted by defendants' contractual breaches.")

■■■ This Court will also address the defendants' argument that these contracts constitute unenforceable contracts of adhesion. "An adhesion contract is generally defined as one 'drafted unilaterally by a business enterprise and forced upon an unwilling and often unknowing public for service that cannot readily be obtained elsewhere.'" *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700, 707 (1991) (quoting *Jones v. Dressel*, 623 P.2d 370, 374 (Colo.1981)). In addressing both unconscionable contracts and adhesion contracts, the court must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract. See *Arnold v. United Companies Lending Corp.*, 204 W.Va. 229, 511 S.E.2d 854, 860 (1998); *Helmick*, 406 S.E.2d at 707. It is impossible to say that defendants' contracts were unconscionable or constituted contracts of adhesion. Although there is some disparate bargaining power between Merrill Lynch as an employer and prospective employees, there is no gross disparity that would render this contract unenforceable. Defendants are intelligent and educated individuals. Additionally, this situation is clearly not of the same vein as insurance contracts and those contracts with public utilities that are used as classic examples of adhesion contracts. Moreover, the contracts entered into by the defendants do not seem unfair, unenforceable or unsupported by proper consideration.

■■■ This Court will also address defendants' contention that under West Virginia law the Merrill Lynch contacts which are the subject of this litigation are unenforceable. Defendants correctly assert that under West Virginia law, a contractual covenant between an employer and an employee which restricts the employee from engaging in business similar to that of the employer within a designated time and territory after the employment should cease, will be enforced if the restriction is reasonably necessary for the protection of the employer and if the restriction does not impose undue hardship on the employee. *Moore Business Forms, Inc. v. Foppiano*, 181 W.Va. 305, 382 S.E.2d 499 (1989); *Helms Boys, Inc. v. Brady*, 171 W.Va. 66, 297 S.E.2d 840 (1982). The most common-

ly asserted protectable employer interests are: (1) skills the employee acquired in the course of employment; (2) confidential or unique information, such as trade secrets or customer lists, and (3) the goodwill of the employer. As this Court found following the temporary restraining order hearing, the computer lists that were compiled by defendants in this case utilized proprietary information, including Merrill Lynch client numbers and social security numbers. The Court still believes that consideration of such computer lists as client lists qualify as "trade secrets" under the Uniform Trade Secrets Act as adopted in West Virginia and the District of Columbia. *See Voorhees v. Guyan Machinery Co.*, 191 W.Va. 450, 446 S.E.2d 672 (1994) (finding that trade secrets and customer lists are confidential and unique information that are protectable employer interests); *Reddy v. Community Health Found. of Man*, 171 W.Va. 368, 298 S.E.2d 906 (1982) (same).

In addition to the "client lists," the defendants here have used various client information learned in their capacity as financial consultants at Merrill Lynch, including client social security numbers and Merrill Lynch account numbers which were then used in the mailing to clients on a Prudential Securities letterhead. Moreover, regardless of the definition of trade secrets and customer lists, the letter sent to Merrill Lynch on the Prudential Securities letterhead clearly amounted to a solicitation which was also prohibited by the employment contracts. Here, Merrill Lynch took extensive precautions to ensure the confidentiality of certain customer information including having defendants sign at least three separate agreements providing for confi-

dentiality and non-disclosure of certain information. The language of the employment agreements in this case is unambiguous. Similar or identical employment agreements have been upheld by many circuits, including the Fourth Circuit in *Merrill Lynch v. Bradley*, 756 F.2d 1048, 1055 (4th Cir.1985).

◾ Finally, this Court finds that the public interest is served by enforcing contracts in an industry that has long used and relied upon such restrictive agreements. This Court observed the defendants, each of whom testified at the preliminary injunction hearing, and determined that all of them were experienced, knowledgeable and well-educated individuals. While the Court will accept their testimony that they did not read their employment agreements before they freely signed them, they must be bound by the terms and conditions of their agreements which are clear and unambiguous. *See Reddy v. Community Health Foundation of Man*, 298 S.E.2d at 910 (W.Va. 1982) ("A person who fails to read a document to which he places his signature does so at his peril."). To deny injunctive relief in this case would cast doubt on the integrity of contractual agreements. *Merrill Lynch v. Kramer*, 816 F.Supp. 1242, 1248 (N.D.Ohio 1992). Injunctive relief insuring the enforcement of these agreements which the court finds under West Virginia law protects a legitimate business interest of the employer and does not impose an undue hardship on the employee, will further prevent defendants from violating a cardinal equity rule that one should not benefit from his or her own wrongdoing.[5]

---

5. While defendants have argued that Rule 11870 of the New York Stock Exchange and Rule 412 of the National Association of Securities Dealers prohibit the enjoining of ac-

count transfers under these circumstances, the plaintiff argues that these are "mechanical rules of transfer" which do not address the effect of injunctive relief on a transfer

Accordingly, based upon the above findings of fact and conclusion of law, a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 is GRANTED and it is hereby ORDERED that:

1. The Defendants are preliminarily enjoined, directly or indirectly, and whether alone or in concert with others, including an officer, agent, employee and/or a representative of Defendants' new employer, Prudential Securities from:

(a) soliciting any business from any client of Merrill Lynch whom Defendants served or whose name became known to the Defendants while the employ of Merrill Lynch, and further, from accepting any business or account transfers from any of said clients whom Defendants have solicited at any time in the past for the purpose of doing business with Defendants' present employer, Prudential Securities (excluding all members of Defendants' immediate families and, in the case of Coffindaffer, Rector and Tragemann, those clients who reside more than 100 miles from Merrill Lynch's Clarksburg, West Virginia office); and further;

(b) using, disclosing or transmitting for any purpose, including solicitation of said clients, the information contained in the records of Merrill Lynch; and that all original records and copies and/or other reproductions thereof, in whatever form, be returned to the Plaintiff Merrill Lynch immediately.

2. Pursuant to Federal Rule of Civil Procedure 65(c), the bond given by the plaintiff in the amount of $200,000.00 at the time of the granting of the temporary restraining order shall continue in effect until further order of this Court.

3. To the extent not already done so in accordance with the Court's order of May 25, 2000, defendants and anyone acting in active concert or participation with defendants who receives actual notice of this order, including any agent, employee, officer or representative of defendant's present employer, Prudential, are further ordered to return to Merrill Lynch's Clarksburg/Bridgeport, West Virginia office any and all information pertaining to Merrill Lynch clients, whether in whole or partial form, and whether in original, copied, computerized, handwritten or any other form, and to purge such information from their possession, custody or control, within twenty-four (24) hours of service of this order upon defendants or their legal counsel.

4. This order shall remain in full force and effect until such time as this court specifically orders otherwise or until a final decision is rendered by a duly appointed panel of arbitrators following the completion of expedited hearings in the arbitration proceedings commenced by Merrill Lynch with the National Association of Securities Dealers; and

5. The parties are directed to proceed with the expedited arbitration proceeding commenced by Merrill Lynch before a duly appointed panel of arbitrators in accordance with Rule 10335(g) of the NASD Code of Arbitration Procedure, without waiver of the parties' rights thereunder.

IT IS SO ORDERED.

The Clerk is directed to transmit copies of this order to counsel of record herein.

request. This Court has reviewed these rules and agrees with plaintiff. Further, this Court cannot locate any case authority for this proposition and defendants have not cited any such authority.