MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Appellant,

v.

Ernest M. McCOLLUM, and Smith Barney, Harris, Upham & Co., Inc., Appellees.

No. B14–83–731CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 9, 1984.

Rehearing Denied March 8, 1984.

Kelly J. Coghlan, Vinson & Elkins, Houston, for appellant.

Mark C. Watler, Woodard, Hall & Primm, Houston, for appellees.

Before ROBERTSON, SEARS and ELLIS, JJ.

## OPINION

ROBERTSON, Justice.

This is appeal from the trial court's: (1) denial of appellant's application for temporary injunction, (2) granting an order compelling arbitration and (3) staying the case pending completion of arbitration. Appellant raises five points of error complaining of the trial court's denying the temporary injunction "as a matter of law, without allowing an evidentiary hearing," considering "unreported and not to be reported case authority," and granting the order to stay the case and compel arbitration since a state court is "not granted the authority under the Federal Arbitration Act to compel arbitration." We affirm.

Appellee, Ernest McCollum ("McCollum"), on or about February 20, 1979, began his employment with appellant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"). Both parties signed an Account Executive Training Agreement and Account Executive Agreement, having identical clauses regarding post-employment solicitation of Merrill Lynch clients and post-employment use of books and records of Merrill Lynch. On or about August 9, 1983, McCollum voluntarily terminated his employment with Merrill Lynch and on or about the same day commenced working for appellee Smith Barney, Harris, Upham & Co., Inc., ("Smith Barney"). Merrill Lynch, in its First Amended Original Petition and Application for Temporary Restraining Order, Temporary Injunction and Permanent Injunction, brought four "counts:" "Illegal Disclosure and Use of Trade Secrets," "Tortious Interference with Contractual and Business Relations," "Contractual Violations of McCollum," and "Unjust Enrichment." In the body of its petition, Merrill Lynch alleged that McCollum has "contacted Merrill Lynch clients to

solicit business and/or the transfer of their accounts from Merrill Lynch to Smith Barney, ... removed and taken records of Merrill Lynch ... in original or in duplicated form and has made use of such records, ... tortiously interfered with the contractual relations between Merrill Lynch and its customers, ... and encouraged and enticed Merrill·Lynch brokers and other personnel to breach their employment contracts with Merrill Lynch." Merrill Lynch alleged that Smith Barney had reason to know of the employment agreements and their terms and that Smith Barney encouraged McCollum in his actions.

Four of appellant's points of error concern the trial court's denial of temporary injunctive relief. Merrill Lynch sought a temporary injunction enjoining appellees from further use of confidential information and further solicitation of Merrill Lynch clients. The trial judge, in denying the application, at least in part, relied on the court's finding that all matters pled by appellant were subject to arbitration. In its first point appellant contends that the trial court erred in finding all matters pled subject to arbitration. We disagree.

First, the trial court had to decide whether an agreement to arbitrate existed, and if so, whether the matters pled by Merrill Lynch came within that agreement. Paragraph 1 & 2 of the Account Executive Agreement proscribe many of the acts which McCollum is accused of committing.

All records of Merrill Lynch including the names and addresses of the clients, are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination for any reason of my employment with Merrill Lynch, and that none of such records nor any part of them is to be removed from the premises of Merrill Lynch either in original form or in duplicated or copied form ....

In the event of termination of my service with Merrill Lynch for any reason, I will not solicit any of the clients of Merrill Lynch for any reason, I will not solicit any of the clients of Merrill Lynch whom I served or whose names become known to me while in the employ of Merrill Lynch, or any subsidiary thereof at which I was employed at any time for a period of one year from the date or termination of my employment ....

Paragraph 5 of the same document provides:

I agree that any controversy between myself and Merrill Lynch arising out of my employment, or the termination of my employment with Merrill Lynch for any reason whatsoever shall be settled by arbitration at the request of either party in accordance with the constitution and Rules of the New York Exchange, then in effect.

■ Merrill Lynch argues that not all of the matters pled are arbitrable since some took place after McCollum terminated his employment with Merrill Lynch and are founded in tort; consequently, they do not come within the parties arbitration agreement which covers controversies "arising out of my employment or the termination of my employment." It cites *Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78 (2d Cir.1983) for this proposition. In *Coudert*, a registered representative sued her former employer brokerage firm claiming defamation, invasion of privacy and intentional infliction of emotional distress. In reversing the trial court, the appellate court held "rather, the dispute itself does not pertain to employment or termination of employment; the tortious acts are all claimed to have occurred after such termination." *Id.*, at 82. Merrill Lynch would have us hold that the *timing* of the alleged controversial acts are determinative of whether the controversy "arises out of employment or termination of employment." We refuse to so hold. We believe *Coudert* should be limited to its facts in that the post-employment controversy concerned tortious conduct alone, not violations of the parties employment agreement such as the case before us. We find support for our position in *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192 (8th Cir.1984). "In the present case, the

temporal aspect is an inevitable consequence of the contract clause in issue." *Id.*, at 195. We believe the proper approach to be an inquiry as to whether the subject matter of the complaints arose out of the parties employment agreement or termination of employment. The mere timing of the controversial acts should not be controlling. In the case at bar Merrill Lynch argues that the express terms of the employment agreement were violated, but since these alleged violations took place after the employee-employer relationship terminated, the controversy does not arise out of employment or termination of employment. We cannot accept this argument.

Merrill Lynch and Smith Barney are members of the New York Stock Exchange and McCollum is a registered representative of the exchange. There is substantial authority for the proposition that, irrespective of the parties employment agreement as drafted by Merrill Lynch, the constitution and rules of the New York Stock Exchange constitute a part of that employment agreement given the parties relationship to the exchange. The scope of the arbitration provisions in these rules and the constitution is even broader than the provisions in the Account Executive Training Agreement and Account Executive Agreement entered into by the parties.

> Section 2 of the Arbitration Act, 9 U.S.C. Section 2 (1970), makes enforceable all arbitration agreements concerning transactions relating to commerce .... Article VIII, Section 1 of the New York Stock Exchange Constitution provides: Any controversy between parties who are members, allied members, member firms or member corporations shall, at the instance of any such party, and any controversy between a non-member firm or member corporation arising out of the business of such member, allied member, member firm or member corporation, ... shall, at the instance of such nonmember, be submitted for arbitration, in accordance with the provisions of the Constitution and the rules of the Board of Governors.

*Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1211 (2d Cir.1972), cert. denied, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972).

> The constitution and rules of a stock exchange constitute a contract between all members of the exchange with each other and with the exchange itself .... Since the rules of the Exchange 'constitute a contract between the members, the arbitration provisions which they embody have contractual validity.' * * * The Exchange provisions requiring arbitration constitute an agreement to arbitrate which is binding upon both [parties].

*Brown v. Gilligan, Will & Co.*, 287 F.Supp. 766, 769–770 (S.D.N.Y.1968).

The counts and allegations pled by Merrill Lynch are set out in the second paragraph of this opinion. At oral argument, Merrill Lynch argued emphatically that three of the counts were non-arbitrable because they did not "arise out of employment or termination of employment." In "count three" Merrill Lynch alleged a cause of action against Smith Barney for "unjust enrichment." No authority was cited recognizing unjust enrichment as a cause of action and our research has yielded none. Quantum meruit is recognized as a cause of action designed to prevent unjust enrichment. Even if "unjust enrichment" were a cause of action we believe it would come within the scope of the constitution and rules of the New York Stock Exchange. Merrill Lynch has not seriously contended that the constitution and rules of the New York Stock Exchange are not applicable to the controversy before us. The trial judge found all the matters pled subject to arbitration. He did not articulate whether he believed them arbitrable pursuant to the parties agreement or the constitution and rules of the New York Stock Exchange. Thus given the applicability of the parties Account Executive Agreement, Account Executive Training Agreement and the rules and constitution of the New York Stock Exchange (particularly Article VIII), we hold that the trial

judge did not abuse his discretion in determining that each count pled by Merrill Lynch was subject to arbitration. We find support for our decision in the following cases: *Wichmann v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 726 F.2d 1286 (8th Cir.1984), *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 725 F.2d 192 (2nd Circuit 1984), *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Thomson, et al.,* 574 F.Supp. 1472 (E.D.Mo.1983). *Smith v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 575 F.Supp. 904 (N.D.Tex. 1983) (order denying preliminary injunction). Appellant's first point of error is overruled.

 In its second and fifth points of error, Merrill Lynch claims the trial court erred in denying its application for temporary injunction because the trial court believed it was without legal authority to issue a temporary injunction. At oral argument both parties argued the issue as to whether the trial judge was correct in denying Merrill Lynch's application for temporary injunction *pending arbitration.* The record shows that Merrill Lynch prayed for "a Temporary Injunction pending final trial herein, or until August 9, 1984, whichever date comes first ... That the Court upon final hearing, make permanent the temporary Injunction ...." *A temporary injunction pending arbitration was never prayed for by Merrill Lynch,* either in the alternative or by amended petition, thus we question whether the issue is properly before us on appeal. Obviously, the trial court could not grant relief not prayed for. However, in light of the fact the trial court in its Order Denying Temporary Injunction stated "this Court therefore lacks authority to grant a temporary injunction pending arbitration," we will address the issue. The Federal Arbitration Act, 9 U.S.C. §§ 3–4 (1976), is instructive in this matter.

§ 3. Stay of proceedings where issue therein referable to arbitration.

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

§ 4

... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

The statute's terms are mandatory and the policy behind having arbitration policy in the first place is that once the arbitration procedure is started it should be speedy and not subject to delay and obstruction in the courts. *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). At oral argument, appellant strenuously defended his position that the language in § 3 "stay the trial" should not be read so as to prevent a trial court from conducting an evidentiary hearing for the purposes of ruling on an application for temporary injunction. We are unpersuaded that such a narrow reading of the word "trial" was intended. As we read the statute, the trial court is obliged to conduct a very narrow two step inquiry. First, it must determine whether a written agreement to arbitrate the subject matter of the present dispute exists between the parties. Second, if such an agreement exists, the court then addresses the question of whether the agreement has been breached. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* — U.S. —, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). See

also *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Thomson, et al.*, 574 F.Supp. 1472 (E.D.Mo.1983). While we are not bound by the decisions of the United States District Courts or even the United States Courts of Appeal, we have read numerous recent opinions in these courts which have dealt with issues similar if not exactly the same as those before us. In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. DeCaro*, 577 F.Supp. 616 (W.D.Mo.1983) the court was presented with the issue of "whether the language, 'shall ... stay the trial of action,' contained in section three, is limited only to a trial on the merits or whether its prohibits all further proceedings before the Court." Merrill Lynch argued in that case as it did before the trial judge here and continues to argue to us that if a temporary injunction is not entered nothing will be left to arbitrate. In denying the application for temporary injunction without an evidentiary hearing, the court in *DeCaro* remarked

> The merits of an arbitrable dispute are for the arbitrator to decide. A court, however, in ruling on a motion for preliminary injunction must consider the merits of the movant's claim and his chances for success. The Court's findings in this regard along with findings in relation to the other factors to be considered would be cited by the parties and could interfere with the arbitrator's independent determination of the issues.

See also *Wichmann v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 726 F.2d 1286 (8th Cir.1984). We agree with the reasoning contained in the above cases. The trial court was correct in denying Merrill Lynch's application for temporary injunction without conducting an evidentiary hearing. Appellant's second and fifth points of error are overruled.

■ Merrill Lynch, in its fourth point of error, contends the trial court was without authority under the Federal Arbitration Act to compel arbitration. While the statute does not by name authorize the state courts to enforce its provisions, Texas courts have enforced arbitration agreements falling within the Federal Arbitra-

tion Act. *White-Weld & Company, Inc. v. Mosser*, 587 S.W.2d 485, 488 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.), *Miller v. Puritan Fashions Corp.*, 516 S.W.2d 234 (Tex.Civ.App.—Waco 1974, writ ref'd n.r.e.), *Mamlin v. Susan Thomas, Inc.*, 490 S.W.2d 634, 637 (Tex.Civ.App.—Dallas 1973, no writ).

Merrill Lynch's argument has been raised and rejected in other jurisdictions as well. In *Episcopal Housing Corp. v. Federal Ins. Co.*, 269 S.C. 631, 239 S.E.2d 647, 652 (1977) the Supreme Court of South Carolina made the following disposition:

> Accordingly, the petition of the plaintiff EHC to enjoin further proceedings in arbitration are denied, and the temporary stays against further proceedings in arbitration are dissolved. The petitions of both Lafaye and McCrory to proceed with arbitration are granted, ... and all further proceedings in this court are stayed until arbitration is ended.

The court held the Federal Arbitration Act superceded South Carolina common law and was enforceable in the state courts. In *Youmans v. Dist. Ct. In & For City of Denver*, 197 Colo. 28, 589 P.2d 487, 488 (1979) the Colorado Supreme Court sitting en banc made the following decision:

> The question before us is whether a member of the NYSE can compel a non-member registered representative of the NYSE to arbitrate a controversy between them arising out of the employment or termination of employment of the registered representative by the member. We answer affirmatively.

See also *Main v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 67 Cal.App.3d 19, 136 Cal.Rptr. 378, 380–381 (1977). We note that the United States Supreme Court has not expressly resolved the question. In *Southland Corp. v. Keating*, —— U.S. ——, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the court reversed the Supreme Court of California and held that the Federal Arbitration Act preempted a state law withdrawing the power to enforce arbitration agreements. It is clear that the issue of arbitra-

bility is governed by a body of substantive federal law applicable in both state and federal court. "Moreover, state courts, as much as federal courts, are obliged to grant stays of litigation under § 3 of the Arbitration Act. It is less clear, however, whether the same is true of an order to compel arbitration under § 4 of the Act." *Moses E. Cone Memorial Hosp. v. Mercury Construction Corp.,* — U.S. —, 103 S.Ct. 927, 942, 74 L.Ed.2d 765 (1983). While the United States Supreme Court has yet to be presented with a fact situation requiring it to expressly hold that § 4 applies to state court proceedings, we believe it would be illogical to have a court empowered to deny injunctive relief and grant stays of litigation, yet be powerless to compel arbitration. We hold that the trial court had the power to compel arbitration under the Federal Act. Point of error number four is overruled.

In its third point of error, Merrill Lynch complains of the trial court's "considering unreported case authority for is legal conclusions and authority, and in allowing appellees to cite such authority." Tex.R.Civ.P. 452(f), the applicable rule, provides: "Unpublished opinions shall not be cited as authority by counsel or by a court." The rule is silent as to whether it is intended to prohibit citations to all unpublished opinions or only unpublished opinions of the courts of appeals. The rule is contained in Part III, Rules of Procedure for the Courts of Civil Appeal. We note there is no such corresponding federal rule. The rule is also silent as to the appropriate sanction for a violation. In *Berry v. Berry,* 647 S.W.2d 945, 947 (Tex.1983), the Texas Supreme Court stated: "Part II, the unpublished portion of the opinion, is of no precedential value and should not be cited." We assume the court there simply refused to consider the unpublished opinion. In the case before us, although unreported (and not to be reported) case authority was cited, we find no evidence that the trial court in any way based its decision or even considered the unreported cases cited. Merrill Lynch's third point of error is overruled.

The judgment of the trial court is affirmed.