COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

TRI-STAR PETROLEUM COMPANY,              )

                                                                              )

Appellant,                          )            
No.  08-02-00107-CV

                                                                              )

v.                                                                           )                 Appeal from the

                                                                              )

TIPPERARY CORPORATION,
TIPPERARY     )               238th District
Court

OIL & GAS CORPORATION,
and                      )

TIPPERARY OIL & GAS
(AUSTRALIA),           )         
of Midland County, Texas

PTY LTD.,                                                            )

Appellees.                          )               
(TC# CV-42,265)

                                                                              )

                                                                              )

 

O
P I N I O N

 

This is an
accelerated, interlocutory appeal from a temporary injunction order that
requires Appellant, Tri‑Star Petroleum Company (ATri‑Star@), to relinquish operations and cease
acting as Operator of the Comet Ridge Project and prohibits Tri‑Star from
interfering with Appellees=
assumption of control and operation of the Project.  A party may appeal from a trial court=s interlocutory order granting a temporary
injunction or overruling a motion to dissolve a temporary injunction.  See Tex.Civ.Prac.& Rem.Code Ann. ' 51.014(a)(4)(Vernon Supp. 2003).








In nine issues for
review, Tri‑Star argues that the trial court erred and abused its
discretion by:  (1) Signing and entering
the temporary injunction; and by granting a temporary injunction that; (2)
alters the status quo; (3) does not make a judicial determination that Tri‑Star
failed or refused to carry out its duties; (4) is an advanced ruling on the
merits; (5) relies on evidence which is subject to binding arbitration and was
outside the court=s purview;
(6) fails to apply the proper standards for removal; (7) is effectively a
mandatory injunction where there is no extreme hardship or special
circumstances; (8) is without evidence or no factually sufficient evidence that
Appellees will suffer irreparable injury in the
interim or that there is no adequate remedy at law; and (9) does not make a
judicial determination that Tipperary would be a
better operator than Tri‑Star.  We
affirm.

PROCEDURAL
BACKGROUND








Appellant Tri‑Star
and Appellees Tipperary
Corp., Tipperary Oil & Gas Corp., Tipperary Oil & Gas (Australia) Pty Ltd. (collectively ATipperary@) are parties to a Joint Operating
Agreement (AJOA@) which governs the development of a
large natural gas project, the Comet Ridge Project, located in Queensland,
Australia.  The JOA dated May 15, 1992,
designated Tri‑Star as the Operator of the Project and Tipperary as one of the non‑operating working
interest owners.  On August 6, 1998, Tipperary filed the underlying suit against Tri‑Star
seeking money damages for alleged mismanagement of the Project by Tri‑Star
and a declaration that Tri‑Star has breached the JOA, has failed to
operate in a good and workmanlike manner, and that cause exists to remove Tri‑Star
as Operator.  In January 1999, a majority
of non‑operators affirmatively voted to remove Tri‑Star as Operator
and selected Tipperary as successor Operator.  In November 2000, the non‑operating
working interest owners again affirmatively voted to remove Tri‑Star as
Operator and to replace Tri‑Star with Tipperary.  On May 1, 2000, Tipperary
filed an amended original petition which alleges that Tri‑Star breached
its contractual obligations under the JOA by refusing to step down as Operator
after the affirmative vote for removal and the selection of Tipperary
as successor.  On November 27, 2000, Appellees filed an application for a temporary injunction
seeking removal of Tri‑Star as Operator. 
On November 13, 2001, Tipperary filed an
amended verified application for a temporary injunction regarding removal of
Tri‑Star Petroleum Company as Operator. 


After a seven‑day
hearing, the trial court granted a temporary injunction in favor of Tipperary, finding that Tipperary
had established a probable right of recovery, probable injury in the interim,
and no adequate remedy at law. 
Specifically, the temporary injunction order in pertinent part finds
that Tipperary is the current lawful operator by vote
of the majority in interest under the terms of the JOA, that
Tri‑Star is prohibited from interfering with Tipperary=s assumption of control and
operation of the Project, and that Tri‑Star shall relinquish operations,
and cease acting as Operator of the Project. 
Tri‑Star now brings this accelerated interlocutory appeal,
challenging the trial court=s
temporary injunction order.

DISCUSSION

Standard
of Review








The decision to
grant or deny the temporary injunction lies within the sound discretion of the
trial court.  Walling v. Metcalfe,
863 S.W.2d 56, 58 (Tex. 1993).  In an
appeal from an order granting a temporary injunction, our review is confined to
the validity of that order.  Id.; Universal Health Services, Inc. v. Thompson, 24
S.W.3d 570, 576 (Tex.App.‑‑Austin 2000,
no pet.).  Abuse of discretion
arises when the trial court misapplies the law to the established facts of the
case or when it concludes that the movant has
demonstrated a probable injury or a probable right to recovery and the
conclusion is not reasonably supported by the evidence.  See State v. Southwestern Bell Tel. Co.,
526 S.W.2d 526, 528 (Tex. 1975); Davis v. Huey, 571 S.W.2d 859, 861‑62
(Tex. 1978); Universal Health Servs., Inc., 24 S.W.3d at 576.  We may neither substitute our judgment for
that of the trial court nor resolve the merits of the underlying case.  See Davis, 571 S.W.2d at 861‑62;
Universal Health Servs., Inc., 24 S.W.3d at 576.  Rather, we view the evidence in light most
favorable to the trial court=s
order, indulging every reasonable inference in its favor, and determine whether
the order is so arbitrary as to exceed the bounds of reasonable
discretion.  See Universal
Health Servs., Inc., 24 S.W.3d at 576.  Where there are no findings of fact or conclusions
of law, as here, we will uphold the trial court=s
judgment on any legal theory supported by the record.  Davis, 571 S.W.2d at
862.  We cannot reverse a trial
court=s order if
the trial court was presented with conflicting evidence and the record includes
evidence that reasonably supports the trial court=s
decision.  Id.  Consequently, a decision based on conflicting
evidence does not constitute an abuse of discretion.  Id.

The
Injunctive Relief Inquiry

At a temporary
injunction hearing, the only issue before the trial court is whether the
applicant is entitled to preservation of the status quo pending a trial on the
merits.  Walling,
863 S.W.2d at 58.  The applicant
need only show a probable right to recovery and a probable injury if temporary
equitable relief is denied; the applicant is not required to establish that he
will finally prevail in the litigation.  See Sun Oil Co. v. Whitaker, 424 S.W.2d 216, 218 (Tex.
1968). 

Preservation
of the Status Quo

In deciding
whether to grant a temporary injunction, the trial court must ascertain whether
the applicant is entitled to preservation of the status quo.  Walling, 863 S.W.2d
at 58.  The status quo is defined
as the last, actual, peaceable, non‑contested status that preceded the
controversy.  Southwestern Bell Tel.
Co., 526 S.W.2d at 528. 








In its Issue Two,
Tri‑Star contends that the trial court abused its discretion because the
order allegedly alters the status quo between the parties pending a trial on
the merits.  Tri‑Star asserts that
the controversy did not begin with Tri‑Star=s
refusal to comply with the vote to remove it as Operator.  Rather, the last peaceable non‑contested
status is Tri‑Star as Operator, the position it held prior to August 6,
1998 when Tipperary filed its lawsuit.  In its original petition, Tipperary
included a request for the trial court to declare that cause exists to remove
Tri‑Star as operator of the Comet Ridge Project.  Tri‑Star argues that the vote to remove
Tri‑Star as Operator occurred after the 1998 filing of this suit and
thus, cannot establish the status quo.  

It is undisputed
that Tri‑Star was the Operator under the JOA when this lawsuit was
originally filed.  However, Tri‑Star=s argument regarding the status quo
relies on a broad interpretation of Athe
controversy@ between
the parties.  In its original petition, Tipperary complained that Tri‑Star had breached
several provisions of the JOA, including allegations that Tri‑Star had
failed to conduct operations in a good and workmanlike manner, committed
several breaches of contract, and had failed and refused to carry out its
duties under the JOA.  In January 1999
and again in November 2000, non‑operator working interest owners exercised
their right to vote under the JOA for removal of the Operator and selection of
a successor.  After the January 1999
vote, Tipperary filed an amended original petition on
May 1, 2000, which included subsequent allegations against Tri‑Star inter
alia a request for injunctive relief to require
Tri‑Star to comply with the majority vote of non‑operators for its
removal and replacement by successor.








Given the standard
of review we must employ, we find that the trial court could have rationally
determined that the last peaceable, non‑contested status between the
parties during this lengthy litigation was the status of the parties prior to Tipperary=s
filing of the amended original petition, i.e., prior to the new controversy as
to whether Tri‑Star must comply with the affirmative vote for its removal
as Operator.  The trial court found that
upon the effective date of the removal vote, Tipperary
became the duly elected successor operator of the Comet Ridge Project.  It was within the trial court=s discretion to find that the status
quo between the parties consisted in non‑operator working interest owners
having the contractual ability under the JOA to follow the provision for
removal and selection of successor as written, which Tri‑Star now
challenges as invalid and requiring judicial determination of cause for
removal.  We overrule Issue Two.

Probable
Right of Recovery

In Issues Three
and Six, Tri‑Star challenges the trial court=s
finding of a probable right to recovery. 
While an applicant for a temporary injunction is not required to
establish that he will finally prevail in the litigation, there must be
probative evidence of a probable right of recovery.  See Walling, 863 S.W.2d at 58; Southwestern
Savings & Loan Assoc. v. Mullaney Construction
Co., Inc., 771 S.W.2d 205, 206 (Tex.App.‑‑El
Paso 1989, no writ).  To establish a
probable right of recovery, Tipperary and Intervenors must have a cause of action for which they may
be granted relief.  See Walling,
863 S.W.2d at 58; Universal Health Servs., Inc., 24 S.W.3d at 577.  

With respect to Tipperary=s
claim that Tri‑Star has violated Tipperary=s and Intervenors= contractual rights to remove it as the
Operator and select a successor, the relevant JOA provisions are found in
Article V:

B. Resignation or Removal of
Operator and Selection of Successor:

 








1.         Resignation or Removal of Operator:  Operator may resign at any time by giving
written notice thereof to Non‑Operators. 
If Operator terminates its legal existence or is no longer capable of
serving as Operator, it shall cease to be Operator without any action by Non‑Operator,
except the selection of a successor. 
Operator may be removed if it fails or refuses to carry out its duties
hereunder, or becomes solvent, bankrupt or is placed in receivership, by the affirmative
vote of two (2) or more Non‑Operators owning a majority interest based on
ownership as shown on Exhibit >A=, and not on the number of parties
remaining after excluding the voting interest of Operator.  Such resignation or removal shall not become
effective until 7:00 o=clock
A.M. on the first day of the calendar month following the expiration of ninety
(90) days after the giving of notice of resignation by Operator or action by
the Non‑Operators to remove Operator, unless a successor Operator has
been selected and assumes the duties of Operator at an earlier date.  Operator, after effective date of resignation
or removal, shall be bound by the terms hereof as a Non‑Operator.  A change of a corporate name or structure of
Operator or transfer of Operator=s
interest to any single subsidiary, parent or successor corporation shall not be
the basis for removal of Operator.

 

2.         Selection of Successor Operator:  Upon the resignation or removal of Operator,
a successor Operator shall be selected by the Parties.  The successor Operator shall be selected from
the parties owning an interest in the Contract Area at the time such successor
Operator is selected.  If the Operator
that is removed fails to vote or votes only to succeed itself, the successor
Operator shall be selected by the affirmative vote of two (2) or more parties
owning a majority interest based on ownership as shown on Exhibit >A=,
and not on the number of parties remaining after excluding the voting interest
of the Operator that was removed. 

 








In its order, the
trial court in part based its finding that Tipperary
and Intervenors had shown a probable right of
recovery on the following evidence presented at the hearing:  (1) There was an affirmative vote by two or more
non‑operators owning a majority working interest under the Joint
Operating Agreement (JOA) to remove Tri‑Star as operator and to select Tipperary as operator; (2) those non‑operators voting
to remove Tri‑Star as operator made the determination under Article V.B.
[of the JOA] that Tri‑Star had failed and refused to carry out its duties
under the JOA; and (3) upon the effective date of the removal vote, Tipperary became the duly elected successor operator of the
Comet Ridge Project but Tri‑Star failed and refused to yield operations
to Tipperary.

The trial court
also found the following non‑exclusive evidence supported the non‑operators= determination that Tri‑Star had
failed or refused to carry out its duties: 
(1) By improperly assessing charges against the Joint Account; (2)
failing to supply reasonable information requested by the non‑operators;
(3) commingling TIPLAW (legal fees incurred by and billed by Tri‑Star in
connection with this suit) funds with other funds in the Joint Account; (4)
unexplained classification and reclassification of amounts billed to the Joint
Account; (5) failing to provide timely and proper adjustments to the Joint
Account for surpluses in the foreign exchange account; (6) double‑charging
Tipperary and Intervenors
on cash calls and subsequent billings; (7) allowing the premature loss of
acreage relinquished to the Queensland government; and (8) its inability to
sustain deliverable quantities of gas under existing contracts. 

Tri‑Star
argues that the trial court erred and abused its discretion by granting the
temporary injunction without making a judicial determination that Tri‑Star
had failed or refused to perform its duties as Operator under the JOA.  According to Tri‑Star, this judicial determination
is a condition precedent to a valid vote for removal of Tri‑Star as
Operator.  Further, Tri‑Star
contends that the trial court did not consider any standard or considered an
improper standard in its order to remove Tri‑Star as the Operator.  Tri‑Star argues that the trial court
should have applied a gross negligence standard, or at the very least, there
must be a showing of complete abdication of all activity and responsibility by
abandonment or by allowing another party to conduct operations on the contract
area.  Alternatively, Tri‑Star
argues that the evidence in the record fails to support Tri‑Star=s removal as operator for allegedly Afailing or refusing to carry out its
duties.@ 








Reviewing the
evidence in the light most favorable to the trial court=s
order, we cannot conclude the trial court abused its discretion in finding a probable
right of recovery.  By Tipperary=s
amended original petition, it alleged that it had a right, based on a majority
vote of the non‑operators to be the successor Operator.  Mr. David Bradshaw, CEO and Director of Tipperary, testified that Tipperary
and Intervenors voted their interests to remove in
January 1999.  According to Mr. Bradshaw,
Tri‑Star was furnished with copies of the vote ballots and has not
resigned operations.  Mr. Bradshaw also
testified as to the same result in the November 2000 ballot vote.  Further, Mr. Bradshaw testified that it was Tipperary=s
position that Tri‑Star has failed or refused to carry out or perform
duties under the JOA. 

In examining the
JOA provisions to determine whether Tipperary has a
probable right of recovery, the trial court could conclude that the JOA
provisions were unambiguous and thus its terms should be given their plain,
ordinary, and generally accepted meaning. 
See Heritage Resources, Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996).  The trial court could conclude from the
evidence that the non‑operators determined that they had cause to remove
Tri‑Star as Operator.  The trial
court in a temporary injunction hearing is only required to find that Tipperary and Intervenors have a
probable right of recovery with respect to their claim of non‑compliance
with the removal vote, not that they will ultimately prevail in the
litigation.  








Tri‑Star
also asserts in its Issue Nine that the temporary injunction is an abuse of
discretion because it does not make a judicial determination that Tipperary would be a better operator than Tri‑Star.  Tri‑Star=s
argument as presented goes to the merits of the case, and we do not reach the
merits of the underlying case in an appeal from the granting of a temporary
injunction.  See
Texas Indus. Gas v. Phoenix Metallurgical Corp., 828 S.W.2d 529, 533 (Tex.App.--Houston [1st Dist.] 1992, no writ).  We overrule Issues Three, Six, and Nine.

Probable
Injury 

In Issue Eight,
Tri‑Star contends that Tipperary and Intervenors presented no or insufficient evidence to show
probable injury.  Tri‑Star also
argues that Tipperary and Intervenors
have an adequate remedy at law for money damages.  Probable injury includes the elements of
imminent harm, irreparable harm, and lack of adequate remedy at law for
damages.  See Surko Enter., Inc. v. Borg‑Warner Acceptance Corp.,
782 S.W.2d 223, 225 (Tex.App.‑‑Houston
[1st Dist.] 1989, no writ).  An
irreparable injury is defined as an injury for which compensation cannot be
made, or for which compensation cannot be measured by any certain pecuniary
standard.  Texas Indus. Gas, 828 S.W.2d at 533.  An
adequate remedy at law is one that is as complete, practical, and efficient to
the prompt administration of justice as is equitable relief.  See Universal Health Servs., Inc., 24 S.W.3d
at 577; Texas Indus. Gas, 828 S.W.2d at 533.








In summary, the
trial court=s order
states that its finding that Plaintiffs and/or Intervenors
will suffer injury for which there was no adequate remedy at law was based in
part on the following evidence:  (1) The
applicants are suffering ongoing and continuing harm because of Tri‑Star=s refusal to relinquish control over
the day‑to‑day operations of the Comet Ridge Project; (2) Tri‑Star=s pace of project development
demonstrates that it cannot, or will not develop the Contract Area in a manner
that is sufficient for Tipperary and Intervenors to deliver the required minimum quantities of
gas called for under existing contract; (3) Tipperary
and Intervenors have lost acreage and will continue
to lose acreage through relinquishment of the Queensland government due to Tri‑Star=s pace of development; and (4) the
evidence established, at least, a threat of irreparable injury to real or
personal property and thus, an injunction is appropriate under Section
65.011(5) of the Texas Civil Practice and Remedies Code irrespective of any
remedy at law.  As to each of the above
findings, the trial court determined that it was impossible to measure by
definite, certain, or useable pecuniary standard the damages caused and that
such harm is imminent, irreparable, and lacks an adequate legal remedy.  

To show probable
injury in the interim, Tipperary introduced
sufficient evidence as to Tri‑Star=s
inability to produce the required minimum amounts of gas under Tipperary=s
long‑term contracts, Energex 1, Energex 2, and QFAL, given Tri‑Star=s historic pace of development.  Mr. Ken Ancell,
a Tipperary executive, testified that Energex has the right to cancel its contract if Tipperary fails to deliver its minimum requirement.  In Mr. Ancell=s opinion, he did not think Tipperary could supply the maximum amount of gas to which Energex is entitled to under the two contracts.  Mr. Ancell based
his opinion on the amount of gas the Project was producing under Tri‑Star=s operation.  According to Mr. Ancell,
he did not see any way that Tri‑Star as operator would be able to deliver
the maximum daily quantity of gas under Energex 2
given the historical pace of the project to date.  Mr. Ancell
testified that he believes Energex 2 is at risk of
cancellation if Tri‑Star continues as operator.  Mr. Ancell further
testified that Tipperary will not be able to fulfill
its obligations under the QFAL contract at Tri‑Star's pace of
development.  








Tipperary also presented sufficient evidence to show that Tipperary and Intervenors will
suffer irreparable harm by the loss of acreage and exploration rights to the
Comet Ridge Project.  Mr. Ancell testified that under the Project=s Authority to Prospect (AATP@)[1]
the Queensland government requires eight new wells to be drilled, in addition
to the Project=s twenty‑well
program of which thirteen wells remain to be completed.  The ATP also requires an additional twelve
wells to be completed.  In addition, Mr. Ancell estimated that the QFAL contract would require a
minimum of eighty wells, thus ninety-two new wells would need to be drilled
beginning November 1, 2002 to October 31, 2004. 
Mr. Ancell did not believe Tri‑Star was
capable of drilling and completing this number of wells in the twenty-four‑month
period.  In addition to the possible loss
of Energex 2 and QFAL contracts, Mr. Ancell testified that if the required wells are not
drilled, the Project would have to relinquish acreage under the ATP.  In Mr. Ancell=s opinion, if Tipperary
takes over operations now, there was a substantial likelihood that Tipperary could prevent some of these injuries and losses
from occurring.  

Tipperary and Intervenors
presented sufficient evidence to show probable injury in the interim.  It was within the trial court=s discretion to determine that there
was no adequate remedy for the loss of unexplored acreage in the Project or for
the loss of long‑term contracts. 
Moreover, the evidence of probable injury presented was sufficient to
support the trial court=s
finding to grant a temporary injunction under Section 65.011(5) of the Texas
Civil Practice and Remedies Code given the threat of irreparable injury to real
or personal property irrespective of any remedy at law.  See Tex.Civ.Prac.&Rem.Code Ann. '
65.011(5)(Vernon 1997).  We overrule
Issue Eight.

Mandatory
or Prohibitive Injunction








In Issue Seven,
Tri‑Star argues that the injunction is mandatory, rather than
prohibitive.  There are two types of
temporary injunctions:  prohibitive and
mandatory.  A prohibitive injunction
forbids conduct, whereas a mandatory injunction requires it.  Universal Health Servs., Inc., 24 S.W.3d at
576; See LeFaucheur v. Williams, 807 S.W.2d 20, 22 (Tex.App.‑‑Austin
1991, no writ).  The
issuing of a temporary mandatory injunction is proper only if a mandatory order
is necessary to prevent irreparable injury or extreme hardship.  See LeFaucheur,
807 S.W.2d at 22. 
While granting a mandatory injunction is within the sound discretion of
the trial court, the grant should be denied absent a clear and compelling
presentation of extreme necessity or hardship. 
See Rhodia, Inc. v.
Harris County, 470 S.W.2d 415, 419 (Tex.Civ.App.‑‑Houston
[1st Dist.] 1971, no writ).  

Tri‑Star
contends that the trial court in effect granted a mandatory injunction, which
altered the status quo without a showing of extreme hardship or other special
circumstance to justify this remedy.  The
temporary injunction order prohibits Tri‑Star from interfering with Tipperary=s
assumption of control and operation of the Project as the successor
Operator.  The order also requires Tri‑Star
to relinquish operations and cease acting as Operator of the Project.  We find that the trial court=s injunction is prohibitive in
nature.  While the order requires Tri‑Star
to take some affirmative action in allowing Tipperary
to assume operation of the Project, the action required on Tri‑Star=s part is incidental to its non‑interference
with the successor Operator=s
assumption of control in the interim.  We
overrule Issue Seven.

Advanced
Ruling on the Merits

A ruling on
temporary injunctive relief may not be used to obtain an advance ruling on the
merits.  See Iranian Muslin Org. v.
City of San Antonio, 615 S.W.2d 202, 208 (Tex.
1981).  In Issue Four, Tri‑Star
contends that the temporary injunction order constitutes an advanced ruling on
the merits on the issue of whether Tri‑Star should be removed as
operator. 








In the underlying
suit, Tipperary has asserted several claims against
Tri‑Star.  Tipperary
alleges that Tri‑Star breached  its contractual obligations under the
JOA inter alia: by failing to provide full
access to all its books and records and information regarding the Project and
by failing to conduct operations in a good and workmanlike manner, which has
resulted in damages in amounts in excess of one million dollars.  Tipperary alleges
that Tri‑Star has breached the mediation and settlement agreements
between the parties, that Tri‑Star has committed civil
conspiracy to defraud and to misapply fiduciary property by overcharging for
goods and services and by failure to properly account for the non‑operators= money and property.  Tipperary also
alleges fraud, breach of fiduciary duties, aiding and abetting a fiduciary in
breach of its duties, negligence per se, gross negligence, and willful
misconduct by violating Texas Penal statutes relating to misapplication of
fiduciary property.  Further, Tipperary seeks a full accounting and a constructive trust
on all proceeds or profits arising out of the use of funds in dispute and
injunctive relief to enforce the removal vote of the non‑operator working
interest owners.  

The record does
not reflect that the trial court ruled on the merits regarding Tipperary and Intervenors= probable right to recovery.  Further, the injunctive relief granted does
not fully grant the relief sought in their lawsuit.  We overrule Issue Four.

Arbitration
Evidence








In Issues One and
Five, Tri‑Star attacks the trial court=s
granting of the temporary injunction and contends that the trial court
erroneously relied on evidence that is subject to binding arbitration to
justify removing Tri‑Star as operator. 
At the hearing, Tipperary presented evidence
related to joint billing disputes some of which were allegedly subject to an
arbitration agreement.  Tipperary introduced this evidence to establish a probable
right of recover and irreparable harm. 
The trial court considered evidence of joint billing disputes, reasoning
that this evidence was relevant to understanding the whole context of the
request for injunctive relief.  

Tri‑Star
relies on Merrill Lynch, Pierce, Fenner &
Smith, Inc. v. McCollum, 666 S.W.2d 604 (Tex.App.‑‑Houston
[14th Dist.] 1984, writ ref=d
n.r.e.), cert. denied, 469 U.S. 1127, 105 S.Ct. 811, 83 L.Ed.2d 804 (1985), in support of its
position that the trial court should have denied the temporary injunction with
respect to issues subject to arbitration prior to an evidentiary hearing.  The McCollum case involved  breach of contract action against a
former employee of a stock brokerage firm. 
McCollum, 666 S.W.2d at 606.  Appellant Merrill Lynch challenged the denial
of a temporary injunction to enjoin a former employee from further use of
confidential information and further solicitation of Merrill Lynch
clients.  Id. at
606.  The trial court denied the
application based on a finding that all matters pled were subject to
arbitration.  Id.  The McCollum Court held that the trial
judge did not abuse his discretion in determining that each count pled by
Merrill Lynch was subject to arbitration. 
Id. at 607‑08.  Tri‑Star asserts that while McCollum
involved the Federal Arbitration Act, the Texas Arbitration Act also requires
that the trial court stay a proceeding that involves an issue subject to
arbitration.  See Tex.Civ.Prac.& Rem.Code Ann.
' 171.025 (Vernon Supp. 2003).

In the present
case, the trial court considered other evidence in addition to the evidence of
joint billing disputes, which we find support its finding of probable recovery
and probable injury.  Even if we assume,
without deciding, that the trial court erred in considering evidence that is
allegedly outside its purview, Tipperary and Intervenors presented other evidence, discussed above,
which was sufficient to support of their application for a temporary
injunction.  We overrule Issues One and
Five.








Having overruled
all of Tri‑Star=s
issues for review, we affirm the trial court=s
judgment.

 

 

January
31, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.











[1]
An Authority to Prospect is an exploration license which gives the holder the
right to explore and develop the subject acreage, but not the right to sell
hydrocarbons.  An ATP holder must apply
for and obtain a petroleum lease from the Australian government in order to
sell the produced product.